RECEIPT
AMOUNT
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MAGISTRATE JUDGE

C. A. NO.

04 10702 RWZ

BOWEN INVESTMENT, INC. and
HONEY DEW ASSOCIATES,
INC.

          Plaintiffs,

v.

C-NINE SEVEN, INC., VICENZO
CIUMMO AND SHARON
CIUMMO,

          Defendants.

## VERIFIED COMPLAINT

### JURISDICTION

1.    The jurisdiction of this Court is based upon 28 U.S.C. §1338 (a) and (b) as this action relates to Defendants' unauthorized use of certain trademarks and Defendants' unfair competition related thereto. The jurisdiction of this Court is further based upon the Trademark Act of 1946 (the Lanham Act), 15 U.S.C. §§ 1051-1127 (1982), specifically §§ 1114(1) and 1125(a). The Court has supplemental jurisdiction over state law claims contained herein pursuant to 28 U.S.C. § 1367(a).

### THE PARTIES

2.    Plaintiff Bowen Investment, Inc. ("BII") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts, with its principal place of business at 2 Taunton Avenue, Plainville, MA.

3.    Honey Dew Associates, Inc. ("HDA") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts with its principal

place of business at 35 Braintree Hill Office Park, Braintree, Massachusetts. At all times relevant hereto, HDA has been in the business of franchising donut and coffee shops known as Honey Dew Donuts® Shop.

4.     Defendant C-Nine Seven, Inc. ("C-Nine Seven") is a Rhode Island corporation with a place of business at 355 Broad Street, Central Falls, RI.

5.     Defendant Vincenzo Ciummo is a citizen of the state of Rhode Island residing at 1060 Oaklawn Avenue, Cranston, Rhode Island.

6.     Defendant Sharon Ciummo is a citizen of the state of Rhode Island residing at 1060 Oaklawn Avenue, Cranston, Rhode Island.

## BACKGROUND

7.     At all times relevant hereto, HDA has been and continues to be the owner of several United States trademarks and service marks, all on the Principal Register, and certain state trademarks and service marks registered in Massachusetts, Rhode Island, Connecticut and New Hampshire, including those set forth in Exhibit "A" hereto (the said trademarks and service marks, together with all trade dress, trade names and other proprietary forms of identification, collectively, the "Marks").

8.     A franchise of a Honey Dew Donuts® Shop, in relevant part, includes providing the franchisee with a license to utilize methods of production, merchandising, display and advertising methods, including the use of specifically designed buildings, equipment accessories, identification schemes, products, management programs, standards, specifications and proprietary recipes, production techniques, the Marks and goodwill (collectively, the "Honey Dew System").

2

9.  At all relevant times hereto, BII and HDA have agreed that BII may act as a subfranchisor for the purpose of franchising certain Honey Dew Donuts® Shops in Rhode Island.

## The Franchise Purchase

10.  In 1998, BII prepared the premises at 355 Broad Street, Central Falls, RI (the "Premises") for operation as a Honey Dew Donuts® Shop, including the purchase and installation of equipment, purchase and installation of signage, and interior and exterior construction and finish work.

11.  At all times relevant hereto, C-Nine Seven, Inc. ("C-Nine Seven") was the tenant of real estate at the Premises pursuant to a Lease dated January 10, 1999 with Michael Dutra and Jeanine G. Therriault (the "Lessors"). At all times relevant hereto, upon termination of the Defendants, BII had a right to assume the lease obligations of the Defendants and become the lessee, pursuant to an Agreement Regarding Lease dated January 11, 1999.

12.  On or about January 11, 1999, BII granted C-Nine Seven a franchise to operate a Honey Dew Donuts® Shop at the Premises, pursuant to a Franchise Agreement, an Agreement Regarding Transfer of Honey Dew donut Franchise and Addendum To Franchise Agreement, an Agreement Regarding Lease and a Lease, copies of which are attached to hereto as Exhibit "B" (collectively, the "Franchise Documents").

13.  Pursuant to a Liability Agreement dated January 11, 1999, a copy of which is attached hereto as Exhibit "C", the individual defendants, jointly and

3

severally, agreed to be liable to BH for all obligations of C-Nine Seven pursuant to the Franchise Documents.

14.    Pursuant to the Franchise Documents, Defendants are required to operate their store in compliance with the Operational Excellence Procedure Manual in effect from time to time and to maintain passing grades on Plaintiffs' inspections in accordance with the then-applicable store inspection policies.

15.    Defendant C-Nine Seven failed its inspection of the Premises on December 18, 2003.

16.    Throughout its term, C-Nine Seven has had numerous Notices of Default issued for failure to maintain the interior and exterior premises, and for operational deficiencies, as well as a Notice of Termination on February 8, 2002. Despite the termination, C-Nine Seven was given an opportunity to cure its defaults and was subsequently reinstated.

17.    On January 5, 2004, a Notice of Default was sent to C-Nine Seven, a copy of which is attached hereto as Exhibit "D". On February 17, 2004, a Notice of Termination of the franchise was sent to C-Nine Seven, a copy of which is attached hereto as Exhibit "E", due to its failure to cure the defaults found during defendants' store inspection on December 18, 2003.

18.    Plaintiffs have tried repeatedly to set up a meeting to correct the deficiencies in the store inspections and discuss reinstatement. A meeting was scheduled several weeks in advance for 10:00 a.m. on March 24, 2004.

19.    Plaintiffs called Defendants on March 23, 2004 to confirm their attendance at the scheduled meeting. Plaintiffs were told that the Defendants would

4

not be attending said meeting. Defendants told Plaintiffs that their attorney would be in touch with Plaintiffs, however, said attorney has not contacted Plaintiffs, nor has he returned Plaintiffs' telephone call.

20.    As of this date, Defendants have failed to terminate its operation of the Shop at the Premise or return the Operational Excellence Procedure Manual to BII, as required in the Franchise Agreement.

## COUNT I- TRADEMARK CLAIMS AND INJUNCTIVE RELIEF

21.    Plaintiffs repeat and reavers the allegations of paragraphs one through twenty of the Complaint as if expressly rewritten and set forth herein.

22.    In relevant part, pursuant to Section XXI(A)(1) of the Franchise Agreements, upon termination, Defendants are required to immediately discontinue the use of all Marks.

23.    Following termination, Defendants continued to operate at the Central Falls, RI location under the Marks and have continued their operations under the signs of HDA.

24.    On or about February 17, 2004, BII forwarded to Defendants a Notice of Termination.

25.    Defendants failed to comply with the Notice of Termination or to cease operations under the Marks and signage of HDA.

26.    In relevant part, section XXI(A)(1) of the Franchise Agreements provide that, upon termination, the franchisee's "continued use of the Proprietary Marks licensed hereunder including, without limitation, the name "Honey Dew Donuts®" shall constitute willful trademark infringement . . ."

5

27.    Use of HDA's trademarks by Defendants after termination is a violation of the Franchise Agreements and constitutes an intentional misuse of HDA's trademarks with the intent to deprive Plaintiffs of their rightful profits and goodwill and to mislead and confuse the public as to the nature and origin of donut and other products being sold by Defendants.

28.    Despite receipt of the Notice of Default and the Notices of Termination, the Defendants have continued to hold themselves out to the public as an authorized Honey Dew Donuts® Shop, have not ceased use of the name, logos, signage, advertising or other property subject to the agreements concerning the use of HDA's Marks and have otherwise failed to comply with the termination provisions of the Franchise Agreements.

29.    Defendants continued use of HDA's Marks, subsequent to termination, constitutes a violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), Massachusetts trademark law, Mass. G.L. c. 110B, §11-13, unfair competition law, and is an unfair and deceptive trade practice pursuant to the provisions of Mass. G.L. c. 93A.

30.    Defendants have misappropriated HDA's Marks with the intent to cause mistake and confusion, and said acts constitute unfair competition and an infringement of HDA's common-law and statutory rights in its trademarks. Defendants' actions are a fraudulent attempt to mislead the public into believing that the goods sold by Defendants were made by, approved by, and/or authorized by HDA and to reap the benefits of such association.

31.    Plaintiffs have no adequate remedy at law and they and their other franchisees will suffer irreparable harm by Defendants' continuing to hold themselves out

as a licensed operator of Honey Dew Donuts® Shops in violation of said Franchise Agreement.

32.    By reason of Defendants' acts alleged herein, Plaintiffs have suffered, and will continue to suffer, damage to their business, reputation and goodwill, have lost sales and profits, as well as the benefit of their respective Franchise Agreements, which have been violated by Defendants, and have incurred counsel fees for which Defendants are liable pursuant to the applicable contracts and applicable statutes and common law.

33.    Pursuant to Sections XXI(A)(4) of the Franchise Agreement, Defendants are required to return to BII the Operational Excellence Procedural Manual.

34.    The Operating Manual and other proprietary papers contain confidential and proprietary information concerning operations of the Honey Dew system.  Plaintiff will suffer irreparable injury if said documents are not returned.

35.    In relevant part, Section XXI(C) of the Franchise Agreements provide that BII is entitled to recover all costs and expenses, including reasonable attorneys' fees, incurred in enforcing the Franchise Agreements.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

A.    Enter a Preliminary Injunction requiring Defendants to peaceably and forthwith tender possession of the Premises to BII;

B.    Enter a Permanent Injunction enjoining Defendants, their agents, officers, directors, representatives, servants, employees and all other persons in active concert or participation with any of them from using HDA's Marks or any reproduction, counterfeit, copy, or colorable imitation of said Marks in connection with the manufacture, holding for sale, sale or otherwise moving or disposing in any manner of any donut and coffee

7

shop products or services or in any way misleading the public and its customers that its products and/or services are connected with Honey Dew Donuts®;

C.     Order to return to the Plaintiffs the Operational Excellence Procedure Manual and all proprietary papers relation to the operation of the Honey Dew system;

D.     Assess and award damages for the period of willful trademark infringement, including Defendant's profits, such other punitive, compensatory and/or exemplary damages as the court may deem just, plus interest, counsel fees and the costs of this action; and

E.     Grant judgment for each Plaintiff against Defendants jointly and severally in such sums as the Court deems just and proper, together with interest, counsel fees and the costs of this action;

F.     Grant such other and further relief, including equitable relief, as this Honorable Court deems just and proper.

## COUNT II- POST TERMINATION DAMAGES

36.     Plaintiff repeats and reavers the allegations of paragraphs one through thirty-five of the Complaint as if expressly rewritten and set forth herein.

37.     Pursuant to Section XXI(B)(2) of the Franchise Agreement, "All other payments which would have come due during the term of your Franchise Agreement ("Installment Payments"), but for the termination, shall continue to come due as if this Agreement had not been terminated including, without limitation, royalty payments . . ."

38.     Pursuant to Section III(A) of the Franchise Agreement, the term was to expire in March 5, 2006.

8

39.    Pursuant to Section II(B) of the Franchise Agreement, Defendants owed BII a weekly Royalty payment of seven (7%) per cent of gross sales.  Pursuant to Section II(C), a copy of which is attached hereto as Exhibit "B", Defendants are also obligated to pay a weekly payment of two (2%) per cent of gross sales to HDA's Advertising Fund.

42.    Pursuant to Section XXI(B)(2) of the Franchise Agreement, BII's damages for weekly Royalties shall be based on the average of weekly gross sales for the calendar year ending prior to termination.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

A.    Determine the post-termination amounts due to HDA pursuant to the Franchise Agreement;

B.    Enter judgment against Defendants for the post-termination sum due, plus costs of collection and counsel fees;  and

C.    For such other relief as may be deemed just.

BOWEN INVESTMENT, INC.,
HONEY DEW ASSOCIATES, INC.,
By its Attorneys,

Date: April 6, 2004

*Janell E. DeGennaro*

Jack J. Mikels, BBO# 345560
Michael A. Wirtz, BBO# 636587
Janell E. De Gennaro, BBO #656306
JACK MIKELS & ASSOCIATES
1 Batterymarch Park, Suite 309
Quincy, MA  02169
Tel:  617.472.5600

9

## **VERIFICATION**

I, Robert P. Bowen, on oath, do hereby certify that I am President of Bowen Investment, Inc. and that I have read the foregoing, and that it is true to the best of my knowledge, information and belief.

Robert P. Bowen, President
Bowen Investment, Inc.

10

## VERIFICATION

I, Richard J. Bowen, on oath, do hereby certify that I am President of Honey Dew

Associates, Inc. and that I have read the foregoing, and that it is true to the best of my

knowledge, information and belief.

_____

Richard J. Bowen, President
Honey Dew Associates, Inc.

F:aa-mik/hii/lit/C-Nineseven/Complaint

11