UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 04-10702-RWZ

| | |
|---|---|
| BOWEN INVESTMENT, INC. and  ) | |
| HONEY DEW ASSOCIATES, INC., ) | |
|     Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| C-NINE SEVEN, INC., ) | |
| VINCENZO CIUMMO AND ) | |
| SHARON CIUMMO, ) | |
|     Defendants ) | |

## JOINT PRETRIAL MEMORANDUM

**1.    Summary of the Evidence**

    **a.    Plaintiff's Evidence**

The plaintiff will offer evidence that C-Nine Seven, Inc. ("C-Nine Seven") breached its Franchise Documents (as defined in the Statement of Stipulated Facts (Attachment A hereto) and was terminated as a Honey Dew franchisee in accordance with the procedure set forth in the Franchise Documents.

In violation of the Franchise Documents, Defendants continue to operate at the Central Falls, RI location under HDA's Marks and continued their operation as a Honey Dew Donuts Shop until approximately June 27, 2004.  Thereafter, until approximately November, 2004, they continued to operate a competing coffee and donut shop.

As set forth in Count I, Defendants are liable for willful trademark infringement for the post-termination period of time they continued to operate as a Honey Dew Donuts Shop, plus punitive damages, interest, counsel fees and costs.  The damages shall be identified by documents the Defendants have agreed to produce, but which have not been produced because Vincenzo Ciummo has been out of the country.

As set forth in Count II, Defendants are liable for post termination damages as defined in the Franchise Agreement, plus interest, counsel fees and costs. Pursuant to the Franchise Agreement, Defendants are liable for:

(i) 16% of gross sales for any post-termination weeks the store continued in operation and (ii) the weekly Royalty payment of seven percent (7%) of gross sales and the weekly payment to HDA's Advertising Fund of two percent (2%) of gross sales from the date the business closed through the intended expiration date of the Defendants' Franchise Agreement, which was March 5, 2006. The Franchise Agreement calculates BII's post-termination damages based on the average of the highest 26 sales weeks of the preceding year.

b.   **Defendants Evidence**

The Defendants will offer evidence that BII, in collusion with HDA, breached the Franchise Agreement by deliberately terminating the franchise in bad faith in retaliation for the defendants' participation in a federal class action against HDA and BII for, among other things, taking illegal kickbacks from suppliers. In support of that claim, the defendants will offer evidence that, until they became plaintiffs in the federal lawsuit, BII took no action and that both HDA and BII have allowed this particular franchise and other franchises to operate after failing inspections or receiving notices of termination; and that the inspector, who solely worked for BII, continued to give the franchise failing scores, even after correcting the problems. The Defendants will offer further evidence of HDA's and BII's bad faith and unfair and deceptive acts and practices by an oppressive, unconscionable and unlawful Reinstatement Agreement offered by BII , which essentially agreed to give the entire operation, lock, stock and barrel, to BII, in the event of another default, which was virtually assured by HDA's control over the inspector and the inspection. As set forth in Counts I-III of the Counterclaim, BII is liable for breach of contract, breach of the warranty of good faith and fair dealing, and violations of Mass. G.L. c. 93A.

As pleaded by their Affirmative Defense 1, "Failure to State A Claim," Affirmative Defense 2, "Illegality" and Affirmative Defense 3, "Fraud,", Defendants will offer evidence that the Franchise Documents were obtained illegally, without disclosures required by law[1]; that the Franchise Documents were induced by intentional misrepresentations and omissions[2], and that the individual liability agreements were supported only by nominal and grossly inadequate consideration.  As pleaded by their Affirmative Defense 5, "Unjust Enrichment," and Affirmative Defense 8, "Unconsionability," the Defendants will prove: (1) that the liquidated damages provision in the Franchise Agreement is unconscionable and an unenforceable penalty, as at the time it was entered into it had no just relationship to the reasonably foreseeable damages which BII would suffer by continued operation of the franchise after termination, which is evidenced by the percentage provided for being almost double the amount of the gross sales to which BII was entitled under the Franchise Agreement and the lack of any explanation for the "inconvenience" that justify the additional damages; (2) that the liquidated damages provision for closing the franchise is  unconscionable and an unenforceable penalty, which is evidenced by a provision in other franchise agreements that the amount of damages will be calculated on the prior years average gross sales, rather than the highest past 26 weeks gross sales; (3) that the so-called liquidated damages provision is an unenforceable acceleration of the franchise Agreement. As pleaded by their Affirmative Defense 9, "Waiver" and Affirmative Defense 1, "Laches," the Defendants will prove  that the defendants continued to pay the Royalties and Advertising Fees required by the Franchise Agreement to BII during the post-termination period that the store continued be operated as an HDA franchise, the acceptance of which payments without notice of reservation of rights constituted an extension of the franchise; and (5)  that by extending the

---

1 Offering Circular deficiencies are being litigated by the same parties before Judge Tauro in Civil Action 03-10965-JLT.  A dispositive motion is pending in that case.

2 These claims are also subject to the same pending motion in Judge Tauro's session.

franchise through acceptance of the Royalties and Advertising Fees that were consideration for use of the HDA trademarks and trade dress, HDA and BII have no right to claim any trademark or trade dress infringement or to claim additional compensation or damages for their use.

**2.   Stipulated Statement of Facts**

The parties' Stipulated Statement of Facts has been set forth in an attachment hereto as Exhibit "A", in a form suitable for submission as an exhibit at trial.

**3.   Contested Issues of Fact**

1. Whether the Defendant C-Nine Seven is bound as a franchisee and whether the individual Defendants, Vincenzo Ciummo and Sharon Ciummo are bound as Guarantors by the Franchise Documents.

2. If the Defendants are bound by the Franchise Documents, then whether BII improperly terminated the franchise agreement.

3. Whether the liquidated damages provision in the Franchise Agreement is enforceable.[3]

4. If Massachusetts General Laws, c. 93A applies to the transaction, then whether BII engaged in unfair or deceptive acts within the meaning of the Act.

**4.   Jurisdictional Issues.**

There are no jurisdictional questions.

**5.   Questions Raised by Pending Motions**

There are no pending motions.

**6.   Issues of Law**

a. Whether the Defendants are barred from claiming affirmative defenses of misrepresentations not described with particularity, as required by Fed.R.Civ.P. 9(b).

b. Whether the liquidated damages provision in the Franchise Agreement is a penalty.

---

[3] Plaintiffs contest whether the Defendants have raised this as an affirmative defense in this action.

c. Whether the liquidated damages provision in the Franchise Agreement is an acceleration clause.

d. Whether BII's continued acceptance of the Royalties and Advertising Fees provided for in the Franchise Agreement after termination of the franchise without any notice of reservation of rights bars HDA from claiming any trademark or trade dress infringement.

**7.    Requested Amendments to the Pleadings**

There are no requested amendments to the pleadings.

**8.    Additional Matters to Aid in the Disposition of the Action.**

a. The issue of whether M.G.L. c. 93A applies to the transaction may be disposed of by Summary Judgment.

b. The issues raised as to whether the liquidated damages provision in the Franchise Agreement is a penalty or an acceleration clause may be disposed of by Summary Judgment. See Honey Dew Associates, Inc. and Bowen Investment, Inc. v. M&K Food Corporation, et al., 81 F.Supp. 2d 352 (200 USDC RI); 241 F.3d 23 (1st Cir. 2001).

c. The issues raised as to whether HDA can claim trademark infringement after accepting Royalty and Advertising Fees from the Defendants can be disposed of by Summary Judgment. See Mastrullo v. Ryan, 328 Mass. 62` 105, N.E.2d 469 (1952) (continued acceptance of rent by landlord after eviction without reservation of rights creates tenancy at will).

**9.    Probable Length of Trial**

The probable length of the trial is three days.

**10.   List of Witnesses**.

Both parties intend to call the following witnesses at trial:

Robert P. Bowen, President
Bowen Investment, Inc.
1215 Reservoir Ave.
Cranston, RI 02910

Richard J. Bowen, President or other entity representative
Honey Dew Associates, Inc.
2 Taunton Street
Plainville, MA

Michael Dutra
300 Crownshield Ave.
Uxbridge, MA 01569

Frank Wrightington,
3 Daniel Drive
North Easton, MA 02356

Vincenzo Ciummo
1060 Oaklawn Avenue
Cranston, Rhode Island

Sharon Ciummo
1060 Oaklawn Avenue
Cranston, Rhode Island

Jack J. Mikels, esq.
JACK MIKELS & ASSOCIATES
Batterymarch Park, Suite 309
Quincy, MA 02169
(671) 472-5600

No testimony via deposition is anticipated.

**11.     Proposed Exhibits**

    1.     Franchise Documents dated January 11, 1999;

    2.     Liability Agreement dated January 11, 1999;

    3.     Agreement Regarding Lease dated January 11, 1999 between Michael G. Dutra, Jeanine G. Therriault, Bowen Investment, Inc. and C-Nine Seven, Inc.;

    4.     Honey Dew Associates, Inc.'s Operational Excellence Procedural Manual;

    5.     Lease for 355 Broad Street, Central Falls, RI, dated January 1999;

    6.     Notice of Default dated January 5, 2004;

    7.     Notice of Termination dated February 17, 2004;

8. Correspondence from Jack Mikels & Associates to Vincenzo and Sharon Ciummo dated February 26, 2004;

9. Correspondence from Jack Mikels & Associates to Vincenzo and Sharon Ciummo dated March 3, 2004;

10. Customer Satisfaction Standards Evaluation dated August 21, 2003;

11. Customer Satisfaction Standards Evaluation dated December 18, 2003;

12. Customer Satisfaction Standards Evaluation dated February 3, 2004;

13. Customer Satisfaction Standards Evaluation dated March 18, 2004;

14. Draft Reinstatement Agreement dated April 12, 2004, between Bowen Investment, Inc., C-Nine Seven, Inc., Vincenzo Ciummo and Sharon Ciummo;

15. Payment history of C-Nine Seven, Inc;

16. Offering Circular Receipt; and

17. Certificates of Registration of Honey Dew Associates, Inc.'s trademarks and service marks.

**12.  Remaining Objections to the Evidence**

None of which the parties are presently aware or which are anticipated. However, due to Vicenzo Ciummo's absence from the country, his and C-Nine Seven's is

scheduled to take place on October 25, 2005 and the documents requested from C-Nine Seven are to be provided in advance of the deposition.

        Respectfully submitted,

        The Parties,
        By Their Attorneys

Attorneys for Plaintiffs        Attorneys for Defendants

Jack J. Mikels        John N. Lewis
BBO# 345560        BBO# 298520
Michael A. Wirtz        Lawrence R. Mehl
BBO# 636587        BBO# 566235
Janell E. De Gennaro        JOHN N. LEWIS & ASSOCIATES
BB0# 656306        21 Merchants Row, 5th Floor
JACK MIKELS & ASSOCIATES        Boston, MA 02109
Batterymarch Park, Suite 309        (617) 523-0777
Quincy, MA 02169
(671) 472-5600

        William E. Gens
        BBO# 556595
        1 Devonshire Place, Suite 1602
        Boston, MA 02109
        (617) 367-0760

## EXHIBIT "A"

## STIPULATED STATEMENT OF FACTS

1.      Honey Dew Associates, Inc. ("HDA") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts with its principal place of business at 2 Taunton Street, Plainville, Massachusetts. At all times relevant hereto, HDA has been in the business of franchising donut and coffee shops known as Honey Dew Donuts® Shop.

2.      At all times relevant hereto, HDA claims it has been and that it continues to be the owner of several United States trademarks and service marks, all on the Principal Register, and certain state trademarks and service marks registered in Rhode Island (the said trademarks and service marks, together with all trade dress, trade names and other proprietary forms of identification, collectively, the "Marks") utilized by HDA and franchisees of the Honey Dew Donuts chain in the operation of their businesses.

3.      Plaintiff Bowen Investment, Inc. ("BII") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts, with its principal place of business at 1215 Reservoir Ave., Cranston, Rhode Island. At all times relevant hereto, BII has clamed to be a subfranchisor for HDA for the purpose of franchising certain Honey Dew Donuts® Shops in Rhode Island.

4.      Defendant C-Nine Seven, Inc. ("C-Nine Seven") is a duly organized Rhode Island corporation which did business at 355 Broad Street, Central Falls, RI (the, "Premises") .

5      On or about January 11, 1999, C-Nine Seven purchased a Honey Dew Donuts business from a franchisee of BII then operating upon the Premises and, in connection with said purchase, BII granted C-Nine Seven a franchise to operate a Honey Dew Donuts® Shop at the Premises, pursuant to a Franchise Agreement, an Agreement Regarding Transfer of Honey Dew

Donut Franchise and Addendum To Franchise Agreement, and an Agreement Regarding Lease (collectively, the "Franchise Documents").

6. Defendant Vincenzo Ciummo ("Vincenzo") is a citizen of the state of Rhode Island residing at 1060 Oaklawn Avenue, Cranston, Rhode Island. At all times relevant hereto, Vincenzo has been the principal officer and an owner of C-Nine Seven.

7. Defendant Sharon Ciummo ("Sharon") is a citizen of the state of Rhode Island residing at 1060 Oaklawn Avenue, Cranston, Rhode Island. At all times relevant hereto, Sharon has been an owner of C-Nine Seven.

8. Vincenzo and Sharon signed the Liability Agreement dated January 11, 1999.

9. At all times relevant hereto, C-Nine Seven was the tenant of real estate at the Premises pursuant to a Lease dated January 10, 1999 with Michael Dutra and Jeanine G. Therriault (the "Lessors").

10. Pursuant to the Franchise Documents, Defendants are required to operate their store in compliance with terms and conditions set forth in the Franchise Documents.

11. On January 5, 2004, pursuant to the Franchise Documents, a Notice of Default was served on C-Nine Seven.

12. On February 3, 2004, C-Nine Seven's shop was re-inspected and did not receive a passing score.

13. Pursuant to the Franchise Documents, on February 17, 2004, a Notice of Termination of the franchise was sent by BII to C-Nine Seven.

15. The Defendants continued to operate at the Premises as a Honey Dew Donuts® Shop until approximately June 27, 2004.

16. During the time that Defendants continued to operate as a Honey Dew Donuts® Shop they continued to pay Royalties and Advertising Fees to HDA and/or BII.

17. Immediately upon ceasing operation as a Honey Dew Donuts® Shop, the Defendants operated at the Premises as a Vinny's Donuts until approximately November, 2004.