UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C. A. NO. 04-10702-RWZ

| | |
|---|---|
| BOWEN INVESTMENT, INC. and<br>HONEY DEW ASSOCIATES, INC.<br>　　　　　　　Plaintiffs,<br><br>v.<br><br>C-NINE SEVEN, INC., VINCENZO CIUMMO<br>AND SHARON CIUMMO,<br>　　　　　　　Defendants. | |

## PLAINTIFF BOWEN INVESTMENT INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' COUNTERCLAIMS

### I.　BACKGROUND

Plaintiff Bowen Investment, Inc. ("BII") is a Massachusetts corporation, engaged in the franchising of Honey Dew Donuts® Shops in Rhode Island. Verified Complaint ¶¶2, 9. Defendant C-Nine Seven, Inc. ("C97") is a Rhode Island corporation which was a franchisee of BII. Id. at ¶12.

In January, 1999, C97 purchased the business of a then-current BII franchise for a Honey Dew Donuts® Shops operating at 355 Broad Street, Central Falls, RI. Id. at ¶12. In connection with said purchase C97 and BII executed a Franchise Agreement and related documents. Id. at ¶12. The owners of C97, defendants Vincent Ciummo and Sharon Ciummo, agreed to be jointly and severally liable to BII for the obligations of C97, pursuant to a Liability Agreement. Id. At ¶13.

On February 17, 2004, BII issued a Notice of Termination to C97 for alleged breaches of the Franchise Agreement. Id. at ¶¶16, 17[1]

Defendants have asserted a three count Counterclaim, asserting claims against BII for breaches of contract (Count I), breaches of the warranty of good faith and fair dealing (Count II) and violations of Mass. G.L. 93A (Count III). For the reasons set forth herein, summary judgment is appropriate as to each of the counterclaims.[2]

## II.    AS A MATTER OF LAW, BII NEITHER BREACHED ITS CONTRACTS WITH DEFENDANTS NOR BREACHED IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING

The gist of Defendants' claim is that BII breached its contracts with Defendants (Count I), breached the implied covenants of good faith and fair dealing arising out of those contracts (Count II) and acted unfairly and deceptively in violation of Mass. G.L. c. 93A (a portion of Count III), by "terminating the franchise in bad faith in retaliation for the defendants' participation in a federal class action claim against (them)[3]. Joint Pretrial Memorandum, previously filed, at §b (Defendants evidence). As a matter of law, this contention is without merit. BII's termination of the franchise occurred *before* Defendants' participation in the federal class action claim.[4]

---

[1] Because disputed issues of material fact exist, Plaintiffs have not moved for summary judgment on the allegations of their Verified Complaint, which seeks post-termination damages.

[2] Although Defendants have listed seven potential witnesses likely to have relevant information regarding their defense to the Plaintiffs' claims, they list no witnesses as likely to have relevant discoverable information about *their own counterclaims*. See Automatic Required Disclosures of Defendants, previously filed.

[3] A putative class action claim against Honey Dew Associates, Inc. ("HDA") and BII is pending in this court as civil action number 2003-10965 JLT (hereafter, the "Class Action Litigation"). At every opportunity, including their portions of the Joint Pretrial Memorandum, Defendants repeat that, in the Class Action Litigation, HDA and BII are accused of taking illegal kickbacks from suppliers. This information is added gratuitously. They neglect to mention that a dispositive motion for summary judgment in that action is pending due to HDA's and BII's denial of ever receiving any illegal kickbacks and plaintiffs' failure to identify any such kickbacks. There is also a pending Motion for Defendants to Dismiss for Perjury and Fraud on the Court.

[4] In the Joint Pretrial Memorandum, Defendants assert that BII misconduct was "in collusion with HDA". However, the Counterclaim states no claim against HDA.

As a franchisee of BII, C97 was required to operate in accordance with an Operating Manual proved by BII and to receive passing grades on inspections of its business performed on behalf of BII. Verified Complaint at ¶14. C97 failed an inspection on December 18, 2003. Id. at ¶15. A Notice of Default was issued January 4, 2004. Id. At ¶9. C97's shop was re-inspected on February 3, 2004 and failed to achieve a passing grade on the re-inspection. Second Affidavit of Robert P. Bowen ("Bowen Affidavit") at ¶¶4-5. A Notice of Termination was issued February 17, 2004. Verified Complaint at ¶9.

The Class Action Litigation was filed in Suffolk Superior Court and removed to the Federal District Court in May, 2003. At that time, the case was filed by franchisees of HDA and BII was not a party to the action, nor was C97 a plaintiff in that action. See Exhibit "A" hereto (exhibits omitted). The possibility of BII being a defendant in the Class Action Litigation was not revealed until March 11, 2004. See Plaintiffs' Motion to Extend the Time to File the Amended Complaint because Defense Counsel will not Assent to the Motion on Behalf of All Defendants, Exhibit "B" hereto. The possibility of C97 being added as a plaintiff was not disclosed until a facsimile of March 30, 2004, Exhibit "C" hereto[5]. C97 was not actually added as a party to that action until an assented to Motion to Amend was allowed on April 20, 2004. See Exhibit D hereto.

The undisputed timeline of relevant events renders it impossible that C97's inspection, default or termination were in retaliation to their joining the Class Action Litigation:

---

[5] The letter is dated March 5, 2004, but indicates it was sent by facsimile only and the facsimile date is March 30, 2004.

Timeline

| | |
|---|---|
| December 18, 2003 | C97 fails inspection |
| January 4, 2004 | Notice of Default issued to C97 |
| February 3, 2004 | C97 fails re-inspection |
| February 17, 2004 | Notice of Termination issued to C97 |
| March 11, 2004 | Counsel for Class Action Litigation Plaintiffs suggests at Scheduling Conference that it will seek to amend and add BII as a party-defendant. |
| March 30, 2004 | Counsel for Class Action Litigation faxes a proposed Second Amended Complaint, adding C97 as a party-plaintiff. |

Based on this timeline, it appears that C97 may have joined the Class Action

Litigation in retaliation for its termination, but it would have been impossible for BII's

inspection, Notice of Default, re-inspection or Notice of Termination to have been in

retaliation for C97's inclusion in the Class Action Litigation, which had not yet occurred.

When the inspection was performed, when the Notice of Default was served, when the re-

inspection was performed, and when the Notice of Termination was served, BII had not

been given any indication that C97 would be joining the Class Action Litigation.

As a matter of law, no "retaliatory termination" could have occurred. No material

facts are in dispute and summary judgment is appropriate for BII as to Counts I and II of

the Counterclaim, and those portions of Count III of the Counterclaim which allege a

retaliatory termination of C97's franchise.

### III.    AS A MATTER OF LAW, BII IS NOT LIABLE FOR 93A VIOLATIONS

In addition to its claims that BII engaged in a retaliatory termination, Defendants allege additional violations of Mass. G.L. c. 93A by BII: (i) BII failed to provide adequate disclosure or offering circulars to Defendants and (ii) BII manufactured a termination to coerce C97 to enter into a revised Reinstatement Agreement on terms more favorable to BII. Counterclaim ¶¶16-17.

### A.    As no actions occurred in Massachusetts, no violation of Mass. G.L. c 93A Occurred

C97 was incorporated and does business in Rhode Island. The individual defendants reside and do business in Rhode Island. The underlying Franchise Agreements relates to a business which operated in Rhode Island.

Mass. G,L, c. 93A, §11 expressly provides: "No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the Commonwealth". The claim relates to inspections which occurred in Rhode Island, offering circulars promulgated under Rhode Island law, and coercion to enter into an agreement in Rhode Island. It is undisputed that all of the actions complained of occurred in Rhode Island and related to assets in Rhode Island. For this reason, by its terms, Mass. G.L. c. 93A is not applicable to this transaction. See e.g., *M&I Heat Transfer Products, Ltd. v. Gorchev,* 141 F.3d 21, 23 (1st Cir. 1998) (company allegedly injured by letters generated in Massachusetts were not subject to statute, since the impact and harm occurred in Tennessee); *Bushkin Assocs., Inc. v. Raytheon Co.,* 393 Mass. 622, 638, 473 N.E.2d 662, 672 (Mass. 1985)(no 93A claim

where misrepresentations made in Massachusetts were alleged to have been received in New York and all damages occurred in New York).

### 1.    Dismissal is appropriate for Offering Circular Claims

Even if Mass. G.L. c. 93A were applicable to this transaction, the offering circular claims should be dismissed, as they are identical to the claims raised by C97 in the Class Action Litigation. See Second Amended Complaint, Exhibit A hereto, Count VII, ¶¶63, 64, 65. That claim is subject to a pending Motion for Summary Judgment. Defendants appear to implicitly concede that these allegations are inappropriate for this action. Their section of the Joint Pretrial Memorandum lists no witnesses to testify as to this issue, nor is the issue mentioned in their Summary of the Evidence.

### 2.    Summary Judgment is appropriate for the Coercion Claims

Even if Mass. G.L. c. 93A were applicable to this transaction, summary judgment is appropriate for the coercion claims. In substance, Defendants claim that BII (i) arranged a termination "with the intent to coerce (C97) to enter into a revised Agreement upon terms more favorable to BII," Counterclaim ¶17, (ii) "took no action" until C97 became a plaintiff in the Class Action Litigation, and (iv) have allowed franchisees, including C97, to operate after receiving notices of termination, and (v) that BII offered an oppressive, unconscionable and unlawful Reinstatement Agreement. Defendants' Summary of the Evidence, §b to the Joint Pretrial Memorandum, previously filed.

Although summary judgment is disfavored in instances in which motive and intent are at issue, *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962), summary judgment is appropriate in the case at bar because

it is undisputed that the underlying factual assertions upon which the claim is based did not occur.

### (a)   Summary Judgment is Appropriate for the claim of "no action" by BII prior to C97's inclusion in the Class Action Litigation

As previously discussed, all of the relevant events leading up to the termination of C97 as a franchisee of BII occurred before C97 became involved in the Class Action Litigation. See §II, supra. In addition, after termination, but before BII learned of C97s inclusion in the Class Action Litigation, it participated in communications with the Defendants to resolve the situation: (i) On February 26, 2004, counsel for BII wrote to co-defendant Sharon Ciummo, offering a meeting and a Reinstatement Agreement "which will allow you to continue as a Honey Dew franchisee but which will also require you to pass your inspections." See Exhibit A to Bowen Affidavit at ¶6; and (ii) On March 3, 2004, BII's counsel wrote to the Ciummos, again requesting their participation in a meeting "because if a Reinstatement Agreement cannot be worked out, this store operation will have to terminate." Id.

Therefore, based on the undisputed facts, there can be no claim that BII "took no action" before learning of C97's inclusion in the Class Action Litigation.

### (b)   The Reinstatement Agreement proposed was neither oppressive, unconscionable nor unlawful

There is no dispute as to the terms of the Reinstatement Agreement offered to the Defendants by BII, a copy of which is attached hereto as Exhibit "E". See Exhibit C to Bowen Affidavit at ¶8   Defendants contend that the Reinstatement Agreement was oppressive, unconscionable and unlawful because it required C97 "to give up the entire operation, lock, stock and barrel, to BII, in the case of another default . . ." Defendants

<u>Summary of the Evidence</u>, §b to Joint Pre-trial Memorandum.  The proposed Reinstatement Agreement provides nothing of the kind.  Rather, the Reinstatement Agreement provided:

      (a)     that C97 pass an inspection after execution;

      (b)     that should C97 fail the inspection, it would be given five days to cure the defaults and be re-inspected;

      (c)     that should C97 fail the re-inspection, that it utilize its best efforts to sell the business, with a 140 day window to sign a Purchase and Sale Agreement and a 180 day window to close the deal; and

      (d)     that should C97 fail to complete all of the above, only then would the shop, its equipment and inventory be released to BII in full satisfaction of all of BII's post-termination claims.[6]

Not only is the proposed Reinstatement Agreement completely different than alleged in the Counterclaim and described by Defendants in the Joint Pretrial Memorandum, it must also be viewed in the context of the circumstances under which it was offered.  Defendants had already been terminated.  They were already potentially liable for post-termination damages, <u>Verified Complaint</u> ¶¶37-39[7] and Exhibit A to <u>Verified Complaint</u>, at §XXI and were required to shut down their business.  Exhibit A to <u>Verified Complaint</u>, at §XIII.  Potential reinstatement,  an additional two chances to pass an inspection, and, if still necessary, six months to sell the business, cannot, as a matter of

---

[6] The Reinstatement Agreement also included a one year probationary period where the same procedure would apply.
[7] The Defendants contend that the post-termination liquidated damages clause is not enforceable, an issue not material to this summary judgment motion.

law, be deemed oppressive, unconscionable or unlawful. BII was not contractually required to provide any reinstatement options.

The Defendants Counterclaim also assumes that they were doomed to fail any subsequent inspections because the inspections were under the Plaintiffs' control. The continuation of passing BII's inspections was a mandatory requirement of the Franchise Agreement to which they were already obligated. Exhibit A to Verified Complaint at §VII(E). Moreover, the proposed Reinstatement Agreement expressly provided that "[a]ll inspections hereunder shall be performed by BII's independent contractor and shall be consistent with the inspection standards applicable to each of BII's comparable franchises." Exhibit E at ¶3(c).

As no facts exist which support the contentions of the Counterclaim, summary judgment is appropriate.

### (c)    No Claim Arises out of a Rejected Settlement Proposal

Even if Mass. G.L. c. 93A were applicable to this transaction, the statute requires proof of a "loss of money or property." Mass. Gen. Laws ch. 93A, §11. "Money" has been construed as "money, not time," and "property" has been interpreted as "the kind of property that is purchased or leased, not such intangibles as a right to a sense of security, to peace of mind, or to personal liberty." Baldassari v. Public Finance Trust, 369 Mass. 33, 45, 337 N.E.2d 701, 708-9 (1975). No damage could possibly have arisen out of BII's offer of a Reinstatement Agreement, since C97did not accept the document. Moreover, a failed effort to resolve a situation could not, as a matter of law, be deemed unfair or deceptive.

## IV.   Summary of Applicable Law

"Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)(quoting *Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).* The Plaintiff "may not rest upon the mere allegations or denials of the pleadings, 'but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" *R. R. Isla Verde Hotel Corp. v. Howard Johnson Int'l, Inc.*, 121 Fed. Appx. 870, 870 (1st Cir. 2005) (quoting Fed. R. Civ. P. 56(e)). Where "the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Feliciano v. Rhode Island*, 160 F.3d 780, 784 (1st Cir. 1998). The nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). "'Conjectural allegations, conclusory assertions, and inconsequential evidence' do not suffice to establish a genuine issue of fact." *Roger Edwards, LLC v. Fiddes & Sons, Ltd.*, 387 F.3d 90, 94 (1st Cir. 2004) (quoting *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000)). Neither do "improbable inferences" or "unsupported speculation." *Medina Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). The nonmoving party must introduce more than a scintilla of evidence to overcome the summary judgment motion. *Street*, 866 F.2d

at 1479. It is not sufficient for the nonmoving party merely to "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In satisfying the burden thus shifted to it, the nonmoving party – in this case the plaintiffs – "must set forth specific facts showing that there is a genuine issue for trial." Id. (quoting *Liberty Lobby, Inc.*, 477 U.S. at 256); see also Fed. R. Civ. P. 56(e). Moreover, the Plaintiffs cannot satisfy this burden merely by showing the existence of *some* factual dispute between the parties, but rather must show the existence of a dispute over a *material* fact that, under the applicable substantive law, governs the outcome of the litigation or particular claim. See *Liberty Lobby, Inc.*, 477 U.S. at 247-48.

Because the Plaintiffs cannot demonstrate the existence of a valid claim, summary judgment for the Defendants is appropriate.

## V.    CONCLUSION

For all the reasons above, BII should be granted summary judgment on Defendants' Counterclaims.

> Plaintiff,
> Bowen Investment, Inc.
> By its Attorneys,
>
> _____
> Jack J. Mikels, BBO# 345560
> Michael A. Wirtz, BBO #
> Jack Mikels & Associates
> 1 Batterymarch Park, Suite 309
> Quincy, MA  02169-7454
> Tel:  617.472.5600

**EXHIBIT "A"**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

B & M DONUTS, INC.,                       )
JM2 COMPANY, INC., AMERICAN               )
STRONG SAFETY FOODS CORP.,                )       CIVIL ACTION
TIME AFTER TIME, INC., NESHER,            )       NO:   03-0688 BLS2
INC. and E & M DONUTS, INC.,              )       (Judge Botsford)
Individually and on Behalf of All Others  )
Similarly Situated,                       )
        Plaintiffs                        )
                                          )
                                          )
vs.                                       )
                                          )       BUSINESS LITIGATION SESSION
HONEY DEW ASSOCIATES, INC.,               )
        Defendant                         )

## FIRST AMENDED COMPLAINT

## THE PARTIES

1.    The plaintiff B & M Donuts, Inc., is a Massachusetts business corporation that does business in a portion of 426 Washington Street, Boston, MA, within Suffolk County.

2.    The plaintiff JM2 Company, Inc., is a Massachusetts business corporation with a principal place of business at 39 Winter Street, Boston, MA, within Suffolk County.

3.    The plaintiff American Strong Safety Foods Corporation is a Massachusetts business corporation with a principal place of business at 196 Harvard Avenue, Allston, MA, within Suffolk County.

4.    The plaintiff Time After Time, Inc. is a Massachusetts business corporation with a principal place of business at 45 Bromfield Street, Boston, MA, within Suffolk County.

5.    The plaintiff Nesher, Inc., is a Massachusetts business corporation which formerly had a principal place of business at a portion of 426 Washington Street, Boston, MA, within Suffolk County.

6.    The plaintiff E & M Donuts, Inc., is a Massachusetts business corporation with a principal place of business at 715 Plymouth Street, Abington, MA.

7.    The plaintiffs bring this action individually on behalf of themselves and all others similarly situated.

8.      The defendant, Honey Dew Associates, Inc. (hereinafter "defendant" or "HDA") is a Massachusetts business corporation with a principal place of business at 35 Braintree Hill Office Park, Braintree, MA.    The defendant licenses franchises to small companies and individuals to operate doughnut shops and other small stores.

## CLASS ALLEGATIONS

9.      The Plaintiff Class consists of all present and former franchisees of the defendant who signed franchise agreements with the defendant which provided (a) that the franchisee must purchase certain supplies and materials from suppliers designated by the defendant, which suppliers charged above-market prices to the franchisees, which suppliers remit commissions, gratuities or other payments to the defendant; and (b) which required the franchisees to contribute to an Advertising Fund which was supposed to to be expended by the defendant, HDA, on advertising, advertising time, and other related items and materials.

10.     The Plaintiff Class contains two subclasses, consisting of the following:

   a.   **Subclass 1**: All present franchisees who are members of the general class and who continue to purchase certain supplies and materials from suppliers designated by the defendant and/or who continue to contribute to the Advertising Fund.

   b.   **Subclass 2**: All former franchisees who are members of the general class and who formerly purchased certain supplies and materials from suppliers designated by the defendant and/or who formerly contributed to the Advertising Fund.

11.     Excluded from the Class are company-owned stores and stores owned in whole or in part by Richard Bowen (president of the defendant) and any of his corporations, or their affiliates and subsidiaries, including (but possibly not limited to) the following: the defendant-owned stores in Brockton (Pleasant Street and South Main Street) and Ware, MA; Stores owned by BII, Inc., and stores owned by Gary Bowen.

12.     The exact number of members of the Class and each subclass is not known to the Named Plaintiffs because it is in the exclusive control of the defendant. However, on information and belief, Subclass1 consists of approximately 170 present franchisees. (The defendant continues to sell and transfer franchises, so this number is in flux but is increasing.) The Class and each subclass is so numerous that joinder of individual members herein is impracticable.

13.     Common questions of law and fact predominate over any questions affecting only individual members of the Class.  Common issues of fact and law include but are to limited to the following:

2

    a.    Whether the defendant, HDA, has failed or refused to use the monies in the Advertising Fund for advertising of Honey Dew Donuts, its products, locations, or other promotional items that would benefit the Class, or whether it has diverted some of the money.

    b.    Whether the defendant's designation of certain approved suppliers who charged above-market prices and then paid money back to the defendant consisted of illegal tie-ins or other unfair or deceptive acts or practices.

    c.    Whether the defendant's conduct and its contractual provisions violated the implied covenant of good faith and fair dealing.

    d.    Whether the defendant's conduct violated Mass. General Laws c. 93, §§ 1 et seq. (the Massachusetts Antitrust Act).

    e.    Whether the defendant's conduct was oppressive or otherwise unconscionable, or otherwise a violation of Mass. General Laws c. 93A and the regulations promulgated thereunder.

14.    The claims of the Named Plaintiffs are typical of the Class, in that the claims of all members of the Class, including the Named Plaintiffs, derive from standard language the defendant has used in all of its franchise agreements for at least the past four years and which it continues to use for all new franchises.

15.    No conflict exists between the Named Plaintiffs and other members of the Class with respect to this action or the claims for relief herein.

16.    The Named Plaintiffs are able to and will fairly and adequately protect the interests of the Class.

17.    The Named Plaintiffs are represented by counsel experienced in complex litigation and franchise litigation.

18.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendant and/or potentially inconsistent results as to the rights of the franchisees and/or the defendant's duties and obligations as to the franchisees.

19.    The defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

20.    A class action is superior to other available methods for fair and efficient adjudication of the controversy.

21.    Jurisdiction exists because the defendant is a Massachusetts business corporation (as

are virtually all of the Class Members) and because, pursuant to Section XXV of the Franchise Agreement (and other similar language in other franchise agreements) all litigation must be submitted to the Courts of the Commonweal of Massachusetts or the U.S. District Court for the District of Massachusetts.

## COUNT I (breach of contract)

22.　The repeat and reaver paragraphs one through 21, inclusive, of this complaint as if expressly rewritten and set forth herein.

23.　The plaintiffs have all entered into Franchise Agreements with the defendant for the plaintiffs to operate Honey Dew Donuts shops at various locations. Exhibit #1 hereto is a true and correct copy of a representative "Franchise Agreement," together with the "Agreement Regarding Transfer of Honey Dew Donuts Franchise Agreement."

24.　Section X of the said Franchise Agreement (and other similar language in other Franchise Agreements) requires the Named Plaintiffs (and other franchisees) to contribute to an Advertising Fund to be expended by the defendant, HDA, on advertising, advertising time, and other related items and materials.

25.　The defendant breached its contracts, including but not limited to, by failing to provide the plaintiffs with the "Advertising Fund Policy Statement"; by failing to provide an accounting of the receipts and expenditures of the Advertising Fund; and by failing or refusing to use the monies in the Advertising Fund for advertising of Honey Dew Donuts, its products, locations, or other promotional items that would benefit the plaintiffs.

26.　On information and belief, the defendant, HDA, has failed or refused to use a significant portion of the monies in the Advertising Fund for advertising of Honey Dew Donuts, its products, locations, or other promotional items that would benefit the plaintiff.

27.　The plaintiffs have complied with all conditions precedent.

28.　As a direct and proximate result of the defendant HDA's breach of contract as hereinabove set forth, the plaintiffs have sustained damages.

WHEREFORE, the plaintiffs pray judgment against the defendant, HDA, together with interest, costs and attorneys' fees.

## COUNT II (breach of implied covenant of good faith and fair dealing)

29.　The plaintiffs repeat and reaver paragraphs one through 28, inclusive, of this complaint as if expressly rewritten and set forth herein.

4

30.    In every Massachusetts contract there is an implied covenant of good faith and fair dealing.

31.    The plaintiffs all entered into contracts with the defendant, HDA, viz., Franchise Agreements, which contains per se illegal provisions, including but not limited to illegal tie-in provisions in violation of the Sherman Act and the Clayton Act, 15 U.S.C. §§ 1 and 14, which HDA seeks to enforce against the plaintiffs, to the detriment of the plaintiffs.

32.    In addition, in other respects, HDA acted in bad faith and breached said Franchise Agreement, causing the plaintiffs to sustain damages.

WHEREFORE, the plaintiffs pray judgment against the defendant, HDA, together with interest, costs and attorneys' fees.

## COUNT III (Chapter 93—The Massachusetts Antitrust Act)

33.    The plaintiffs repeat and reaver paragraphs one through 32, inclusive, of this complaint as if expressly rewritten and set forth herein.

34.    Jurisdiction rests with this Court because the defendant's conduct occurred primarily and substantially within Massachusetts, and only incidentally, if at all, outside of New England.

35.    Less than ten percent (10%) of the defendant's gross revenues derived from transactions involving interstate commerce outside of Massachusetts.

36.    Section VII of the Franchise Agreement (and other similar language in other Franchise Agreements) restricts the plaintiffs' purchases from suppliers and of supplies and suppliers to ones previously approved by the defendant HDA.

37.    HDA has refused to approve suppliers of non-proprietary products and supplies that sell standard items (including but not limited to sugar and flour). The tying and tied products are distinct products; the Franchise Agreement establishes an express or implied tie; by virtue of the Franchise Agreement and otherwise; HDA has sufficient economic power in the market to distort the choices of the franchisees with respect to the tied products; and the tie forecloses a substantial amount of commerce in the market for the tied products.

38.    On information and belief, the defendant has restricted the use of suppliers to those who charge higher prices to franchisees, including the Named Plaintiffs, and that the defendant or its officers, agents or employees receive kick-backs, bonuses or other incentives as inducements or in consideration thereof.

39.    The conduct of the defendant, as hereinabove set forth in this Complaint, was oppressive and/or unconscionable, was in violation of Mass. General Laws c. 93, §§

5

1, et seq., and the Sherman Act and Clayton Act, and was done with a malicious intent to injure the plaintiffs.

40. As a direct and proximate result of the defendant's conduct as hereinabove set forth, the plaintiffs have sustained damages and injuries.

WHEREFORE, the plaintiffs pray judgment against the defendant, HDA, together with multiple damages, interest, costs and attorneys' fees.

## COUNT IV (conversion)

41. The plaintiffs repeat and reaver paragraphs one through 40, inclusive, of this complaint as if expressly rewritten and set forth herein.

42. The plaintiffs have made (and the Subclass 1 plaintiffs continue to make), substantial contributions to the defendant HDA's Advertising Fund under Section X of the Franchise Agreement or other similar provisions of other Franchise Agreements.

43. The defendant HDA converted property of the plaintiffs and intentionally or wrongfully exercised acts of control, ownership or dominion of the personal property, including but not limited to, by failing to provide an accounting of the receipts and expenditures of the Advertising Fund; and by failing or refusing to use the monies in the Advertising Fund for advertising of Honey Dew Donuts, its products, locations, or other promotional items that would benefit the plaintiffs.

44. As a direct and proximate result of HDA's wrongful conduct as hereinabove set forth, the plaintiffs have sustained damages.

WHEREFORE, the plaintiffs pray judgment against the defendant HDA, together with interest, costs and attorneys' fees.

## COUNT V (accounting)

45. The plaintiffs repeat and reaver paragraphs one through 44, inclusive, of this complaint as if expressly rewritten and set forth herein.

46. The plaintiffs have made and continue to make, substantial contributions to the defendant HDA's Advertising Fund under Section X of the Franchise Agreement or other similar provisions of other Franchise Agreements.

47. HDA has not accounted for the plaintiffs' contributions to the defendant HDA's Advertising Fund under Section X of the Franchise Agreement or other similar provisions of other Franchise Agreements.

WHEREFORE, the plaintiffs pray judgment as follows:

6

I.  That HDA be ordered to make a full and complete accounting of all money and proceeds, including but not limited to all disbursements of the Advertising Fund.

II.  That the amount belonging to the plaintiffs from the defendant be ascertained and determined, and that the defendant be ordered and enjoined to turn over and pay the same to the plaintiffs.

III. That the plaintiffs be awarded costs, including attorneys' fees.

IV. For such other relief as the Court deems just.

## COUNT VI (c. 93A)

48.  The plaintiffs repeat and reaver paragraphs one through 47, inclusive, of this complaint as if expressly rewritten and set forth herein.

49.  Section VII of the Franchise Agreement (and other similar language in other Franchise Agreements) restricts the plaintiffs' purchases from suppliers and of supplies and suppliers to ones previously approved by the defendant HDA.

50.  HDA has refused to approve suppliers of non-proprietary products and supplies that sell standard items (including but not limited to sugar and flour). The tying and tied products are distinct products; the Franchise Agreement establishes an express or implied tie; by virtue of the Franchise Agreement and otherwise; HDA has sufficient economic power in the market to distort the choices of the franchisees with respect to the tied products; and the tie forecloses a substantial amount of commerce in the market for the tied products.

51.  On information and belief, the defendant has restricted the use of suppliers to those who charge higher prices to franchisees, including the Named Plaintiffs, and that the defendant or its officers, agents or employees receive kick-backs, bonuses or other incentives as inducements or in consideration thereof.

52.  The defendant's conduct as hereinabove set forth constitutes per se illegal "tie-ins" in violation of the Sherman Anti-Trust Act and the Clayton Act. 15 U.S.C. §§ 1 and 14.

53.  The conduct of the defendant, as hereinabove set forth in this Complaint, was oppressive and/or unconscionable, was violations of Mass. General Laws c. 93A, §§ 2 and 11, and the regulations promulgated thereunder, and was knowing and willful.

54.  As a direct and proximate result of the defendant's conduct as hereinabove set forth, the plaintiffs have sustained damages and injuries.

WHEREFORE, the plaintiffs pray judgment against the defendant, HDA, together with multiple damages, interest, costs and attorneys' fees.

7

**COUNT VII (declaratory judgment)**

55.  The plaintiffs repeat and reaver paragraphs one through 54, inclusive, of this complaint as if expressly rewritten and set forth herein.

56.  The Franchise Agreement requires the Named Plaintiffs to buy from designated suppliers at above-market prices, even though the defendant has claimed the franchisees will be paying below-market prices. The defendant admits receiving payments from the designated Suppliers in exchange for such designations. The plaintiffs allege this constitutes illegal tie-ins, while the defendant alleges this is not unlawful.

57.  The defendant also denies that it has acted improperly with regard to the Advertising Fund and other provisions of the Franchise Agreement (and similar language in other franchise agreements).

58.  As a result, there is an actual controversy which is ripe for adjudication.

WHEREFORE, the plaintiffs pray judgment as follows:

I.  For a judgment of the Court, interpreting the Franchise Agreement, and declaring the rights and responsibilities of the parties.

II.  That the defendant be enjoined and restrained from utilizing any contributions to the Advertising Fund for any purpose other than advertising for the direct benefit of the Subclass I plaintiffs.

III. For costs, including attorneys' fees.

IV. For such other relief as the Court deems just.

The plaintiffs,
By their attorney,

Jeffrey D. Woolf
BBO #534360
JEFFREY D. WOOLF, ESQ., P.C.
21 Merchants Row, 5th Floor
Boston, MA 02109-2005
(617) 973-9022

EXHIBIT
B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 APR -1  P 2:31

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| B & M DONUTS, INC., | ) | |
| NESHER, INC, E&M DONUTS, INC., | ) | |
| and R.T.T.S., INC., | ) | CIVIL ACTION |
| Individually and on Behalf of All Others | ) | NO:   03-10965-RCL |
| Similarly Situated, | ) | |
| Plaintiffs | ) | |
|  | ) | |
| vs. | ) | |
|  | ) | |
| HONEY DEW ASSOCIATES, INC., | ) | |
| Defendant | ) | |
|  | ) | |

**PLAINTIFFS' MOTION TO EXTEND THE TIME TO FILE THE AMENDED
COMPLAINT BECAUSE DEFENSE COUNSEL WILL NOT ASSENT TO THE
MOTION ON BEHALF OF ALL DEFENDANTS**

Now come the plaintiffs and respectfully move to extend the time to April 15, 2004 to file

the Second Amended Complaint with the Court. In support of their motion, the plaintiffs assign

as reasons the following:

1)    At the Scheduling Conference held on March 11, 2004, the Court ordered the

plaintiffs to file their Amended complaint by April 1, 2004, and "requested" of

defense counsel (who was present) that the defendant assent to the motion to file the

amended complaint.

2)    Also at the Scheduling Conference, plaintiffs' counsel disclosed that they would add

Bowen Investment, Inc. ("BII") as a party because it was the sub-franchisor of the

defendant Honey Dew Associates, Inc. ("HDAI"). Mr. Mikels voiced no opposition

to adding BII as a party at that time.

3)    On March 26, 2004, plaintiffs' counsel faxed to defense counsel (Jack J. Mikels) a

draft Second Amended Complaint which included BII and BRI, Inc. as additional defendants. The plaintiffs reminded defense counsel of the Court's request that defense counsel assent to a motion to file an Amended Complaint. No response was received from defense counsel.

4)    On March 30, 2004, plaintiffs' counsel faxed to defense counsel a corrected copy of the Second Amended Complaint (which changed no substantive allegations). The plaintiffs again reminded defense counsel of the Court's request that defense counsel assent to a motion to file an Amended Complaint.

5)    On March 31, 2004, defense counsel responded by assenting to the motion to amend as to the defendant HDAI, only, but declining to assent as to the additional defendants, BII and BRI. (A true and correct copy of Mr. Mikels's letter is appended hereto as Exhibit #1.)

6)    The refusal of defense counsel (Mr. Mikels) to assent on behalf of BII and BRI is at best baffling, since (a) Mr. Mikels himself is the clerk of both BII and BRI; (b) Mr. Mikels currently represents BII in other litigation presently pending before this Court (viz., *Bowen Investment, Inc. v. S.G.B. Ltd.*, C.A. #03-CV-12509, filed on December 15, 2003); and (c) Mr. Mikels represents BRI, Inc. in other litigation filed in the state court. E.g., *Mass. Electric Co v. BRI, Inc., et al.*, Norfolk Superior Court c.a. 2001-00633, and *Affanato v. BRI, Inc., et al.*, Plymouth Superior Court c.a. 1995-01573.

7)    Moreover, BRI, Inc. and BII are both related to HDAI. Richard Bowen, the president and sole owner of HDAI, is also the president and treasurer of BRI, Inc. Richard Bowen is a 50% owner of BII (of which his brother, Robert Bowen, is president and treasurer.) See http://corp.sec.state.ma.us/corpsearch for information on all three

2

corporations.

8)   As a result of Mr. Mikels's refusal to assent to the motion to amend the complaint on
     behalf of BII and BRI, it is necessary under L.R. 15.1(B) to re-send the materials and
     give notice of the date when the motion to amend will be filed. As L.R.15.1(B)
     requires the new parties be given at least ten days' advance notice, the plaintiffs
     request an extension of time to April 15, 2004, so that they may comply with
     L.R.15.1(B).

9)   Perversely, since Mr. Mikels is clerk of both BII and BRI, notice under Fed.R.Civ.P.
     5(b) as required by L.R. 15.1(B) will be sent to Mr. Mikels himself. (Rule 5(b)
     requires that notice be given to the counsel for the party or to the clerk of the
     corporate party.)

10)  The refusal of Mr. Mikels to assent to the motion to amend on behalf of BRI, Inc. and
     BII of which he is both counsel and the clerk of the corporation, is presumably
     because he will not be representing them in the present litigation. (See the letter of
     plaintiff's counsel to Mr. Mikels dated March 31, 2004; Exhibit #2 hereto.)

WHEREFORE, plaintiffs and respectfully move to extend the time to April 15, 2004 to
file the Second Amended Complaint with the Court.


## CERTIFICATE OF COMPLIANCE WITH L.R.7.1(B)

I, Jeffrey D. Woolf, counsel for the plaintiffs, hereby certify that I have conferred with
defense counsel and have attempted in good faith to resolve or narrow the issue.

Jeffrey D. Woolf

3

Respectfully submitted,

The plaintiffs,
By their attorney,

Jeffrey D. Woolf
BBO #534360
JEFFREY D. WOOLF, ESQ., P.C.
21 Merchants Row, 5th Floor
Boston, MA 02109-2005
(617) 973-9022

## CERTIFICATE OF SERVICE

I, Jeffrey D. Woolf, counsel for the plaintiffs, hereby certify that on this date I served the foregoing on all other parties by mailing copies thereof, postage prepaid, to counsel for all other parties, Jack J Mikels, Esq., Jack Mikels & Associates, 1 Batterymarch Park, Suite 309, Quincy, MA 02169-7454, and William E. Gens, Esq., 1 Devonshire Place, Suite 1602, Boston, MA 02109-3500.

Date:   March 31, 2004

Jeffrey D. Woolf

4



# JEFFREY D. WOOLF, ESQ., P.C.
**Attorney at Law**
**21 Merchants Row, 5ᵗʰ Floor**
**Boston, MA 02109-2005**
**Telephone (617) 973-9022**
**Telecopier (617) 523-1755**

March 5, 2004

Jack J. Mikels, Esq.
Jack Mikels & Associates
1 Batterymarch Office Park, Suite 309
Quincy, MA 02169-7454

> Re:   *Honey Dew Associates, Inc. v. Nesher, Inc., et al.*

Dear Jack:

I am still waiting to hear from you concerning your assent to a motion to amend the complaint as requested by Judge Lindsay. In the interim, I have made some further revisions to the Second Amended Complaint, correcting some typographical errors and adding some plaintiffs. It is enclosed.

This should go in the mail to the court tomorrow. Please advise if I may sign your assent to a motion to file it.

Thanks very much.

Very truly yours,

Jeffrey D. Woolf

JDW:si

enc. 1

**BY TELECOPIER ONLY**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| B & M DONUTS, INC., ) | |
| NESHER, INC., E & M DONUTS, INC., ) | |
| C-NINE SEVEN, INC., R.T.T.S., INC., ) | |
| and CATAHOULA CORP., ) | CIVIL ACTION |
| Individually and on Behalf of All Others ) | NO: 03-10965-RCL |
| Similarly Situated, ) | |
| Plaintiffs ) | |
| ) | |
| vs. ) | |
| ) | |
| HONEY DEW ASSOCIATES, INC., ) | |
| BRI, INC., and ) | |
| BOWEN INVESTMENT, INC., ) | |
| Defendants ) | |

## SECOND AMENDED COMPLAINT

### THE PARTIES

1. The plaintiff B & M Donuts, Inc., is a Massachusetts business corporation that does business in a portion of 426 Washington Street, Boston, MA.

2. The plaintiff E & M Donuts, Inc. is a Massachusetts business corporation with a principal place of business at 715 Plymouth Street, Abington, MA.

3. The plaintiff Nesher, Inc. is a Massachusetts business corporation which has a principal place of business at 615 Chestnut Hill Avenue, Brookline, MA 02445.

4. The plaintiff R.T.T.S., Inc. is a Massachusetts business corporation with a principal place of business at 773 Washington Street, Stoughton, MA.

5. The plaintiff Catahoula Corp. is a Massachusetts business corporation with a principal place of business at 125 Broadway Street, Fall River, MA.

6. The plaintiff C-Nine Seven, Inc. is a Rhode Island business corporation with a principal place of business at 355 Broad Street, Central Falls, RI.

7. The plaintiffs bring this action individually on behalf of themselves and all others similarly situated.

8.  The defendant, Honey Dew Associates, Inc. (hereinafter "HDAI") is a Massachusetts business corporation with a principal place of business at 35 Braintree Hill Office Park, Braintree, MA. The defendant licenses franchises to small companies and individuals to operate doughnut shops and other small stores.

9.  The defendant Bowen Investment, Inc. (hereinafter "BII") is a Massachusetts business corporation with a principal place of business at 2 Taunton Street, Suite 5, Plainville, MA. The defendant is the exclusive subfranchisor for HDAI for licensing franchises to small companies and individuals to operate doughnut shops and other small stores primarily in the state of Rhode Island.

10. The defendant BRI, Inc. is a Massachusetts business corporation with a principal place of business at 35 Braintree Hill Office Park, Braintree, MA. For a period of time as yet unknown, BRI, Inc. has managed the co-defendant HDAI. On information and belief, BRI, Inc. is responsible (jointly and severally) for the content, errors and omissions in the offering circulars used by HDAI and BII.

## CLASS ALLEGATIONS

*formerly, ¶38*

11. The plaintiffs have all entered into Franchise Agreements with one or more of the defendants for the plaintiffs to operate Honey Dew Donuts shops at various locations. Exhibit #1 hereto is a true and correct copy of a representative "Franchise Agreement," together with the "Agreement Regarding Transfer of Honey Dew Donuts Franchise Agreement."

12. The Plaintiff Class consists of all present and former franchisees of the defendant who signed franchise agreements with either or both of the defendants which provided (a) that the franchisee must purchase certain supplies and materials from suppliers designated by the defendant, which suppliers charged above-market prices to the franchisees, which suppliers remit commissions, gratuities or other payments to either or both of the defendants; and (b) which required the franchisees to contribute to an Advertising Fund which was supposed to be expended by the defendant, HDAI, on advertising, advertising time, and other related items and materials.

13. The Plaintiff Class contains two subclasses, consisting of the following:

   a.  **Subclass 1**: All present and former franchisees (other than those located in Rhode Island) who are members of the general class who purchased and/or who continue to purchase certain supplies and materials from suppliers designated by the defendant and/or contributed to, and/or who continue to contribute to the Advertising Fund;

   b.  **Subclass 2**: All present and former franchisees, located in Rhode Island, who are members of the general class who purchased and/or who continue to purchase certain supplies and materials from suppliers designated by the defendant and/or contributed to, and/or who continue to contribute to the

2

Advertising Fund.

14. Excluded from the Class are company-owned stores and stores owned in whole or in part by Richard Bowen (president of the defendant HDAI) and any of his corporations, or their affiliates and subsidiaries, including (but possibly not limited to) the following: the defendant-owned stores in Brockton (Pleasant Street and South Main Street) and Ware, MA; Stores owned by BII, and stores owned by Gary Bowen.

15. The exact number of members of the Class and each subclass is not known to the Named Plaintiffs because it is in the exclusive control of the defendant. However, on information and belief, Subclass1 consists of approximately 170 present franchisees. (The defendant continues to sell and transfer franchises, so this number is in flux but is increasing.) The Class and each subclass is so numerous that joinder of individual members herein is impracticable.

16. Common questions of law and fact predominate over any questions affecting only individual members of the Class. Common issues of fact and law include but are to limited to the following:

   a. Whether the Offering Circular contained a list of the names and addresses of each person from whom is directly or indirectly required by the franchisor to purchase, lease or rent certain services, supplies, products, inventories, signs, fixtures, or equipment relating to the establishment or the operation of the franchise business as required by 16 C.F.R. §436.1(a)(10).

   b. Whether the Offering Circular contained a description of the basis for calculating, and, if such information is readily available, the actual amount of, any revenue or other consideration to be received by the franchisor or persons affiliated with the franchisor from suppliers to the prospective franchisee in consideration for goods or services which the franchisor requires or advises the franchisee to obtain from such suppliers, as required by 16 C.F.R. §436.1(a)(11).

   c. Whether the Offering Circular contained the total number of company-owned outlets operating at the end of the preceding fiscal year as required by 16 C.F.R. §436.1(a)(16)(ii).

   d. Whether the defendants' conduct violated federal anti-trust laws, statutes, codes, or regulations.

   e. Whether the defendants failed or refused to use the monies in the Advertising Fund for advertising of Honey Dew Donuts, its products, locations, or other promotional items that would benefit the Class, or whether some of the money was diverted.

   f. Whether the defendants' designation of certain approved suppliers who charged

3

above-market prices and then paid money back to the defendant consisted of illegal tie-ins or other illegal, unfair or deceptive acts or practices.

g.  Whether the defendants' conduct and its contractual provisions violated the implied covenant of good faith and fair dealing.

h.  Whether the defendants' conduct violated Mass. General Laws c. 93, §§ 1 et seq. (the Massachusetts Antitrust Act), or any other laws, statutes or regulations.

i.  Whether any or all of the defendants required a franchisee to execute a release in favor of the franchisor as a condition for permission to sell, transfer or terminate the franchise, without adequate consideration.

j.  Whether the defendants' conduct was oppressive or otherwise unconscionable, or otherwise a violation of Mass. General Laws c. 93A and the regulations promulgated thereunder.

17.  The claims of the Named Plaintiffs are typical of the Class, in that the claims of all members of the Class, including the Named Plaintiffs, derive from standard language the defendants have used in all of its franchise agreements for at least the past six years and which it continues to use for all new franchises.

18.  No conflict exists between the Named Plaintiffs and other members of the Class with respect to this action or the claims for relief herein.

19.  The Named Plaintiffs are able to and will fairly and adequately protect the interests of the Class.

20.  The Named Plaintiffs are represented by counsel experienced in complex litigation and franchise litigation.

21.  The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the defendants and/or potentially inconsistent results as to the rights of the franchisees and/or the defendants' duties and obligations as to the franchisees.

22.  The defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

23.  A class action is superior to other available methods for fair and efficient adjudication of the controversy.

24.  Jurisdiction exists because the defendants are all Massachusetts business corporations (as are virtually all of the Class Members) and because, pursuant to Section XXV of the Franchise Agreement (and other similar language in other franchise agreements)

4

all litigation must be submitted to the Courts of the Commonwealth of Massachusetts
or the U.S. District Court for the District of Massachusetts.

## COUNT I (federal anti-trust violations)

25.  The plaintiffs repeat and reaver paragraphs one through 24, inclusive, of this
     complaint as if expressly rewritten and set forth herein.

26.  Section VII of the Franchise Agreement (and other similar language in other
     Franchise Agreements) restricts the plaintiffs' purchases from suppliers and of
     supplies and suppliers to ones previously approved by the defendant HDAI.

27.  Either on its own or acting in concert with or on the advice of the co-defendants,
     HDAI has refused to approve suppliers of non-proprietary products and supplies that
     sell standard items (including but not limited to sugar and flour). The tying and tied
     products are distinct products; the Franchise Agreement establishes an express or
     implied tie; by virtue of the Franchise Agreement and otherwise; HDAI has sufficient
     economic power in the market to distort the choices of the franchisees with respect to
     the tied products; and the tie forecloses a substantial amount of commerce in the
     market for the tied products.

28.  On information and belief, the defendants have restricted the use of suppliers to those
     who charge higher prices to franchisees, including the Named Plaintiffs, and that the
     defendant or its officers, agents or employees receive kick-backs, bonuses or other
     incentives as inducements or in consideration thereof.

29.  The conduct of the defendants, as hereinabove set forth in this Complaint, was
     oppressive and/or unconscionable, was in violation of the Sherman Act and Clayton
     Act, and was done with a malicious intent to injure the plaintiffs.

30.  As a direct and proximate result of the defendants' conduct as hereinabove set forth,
     the plaintiffs have sustained damages and injuries.

WHEREFORE, the Sub-Class I Plaintiffs pray judgment against the defendants HDAI
and BRI, jointly and severally, together with treble damages, interest, costs and attorneys' fees.

WHEREFORE, the Sub-Class II Plaintiffs pray judgment against all of the defendants,
jointly and severally, together with treble damages, interest, costs and attorneys' fees

## COUNT II (Chapter 93—The Massachusetts Antitrust Act)

31.  The plaintiffs repeat and reaver paragraphs one through 30, inclusive, of this
     complaint as if expressly rewritten and set forth herein.

32.  Jurisdiction rests with this Court because the defendants' conduct occurred primarily

and substantially within Massachusetts, and only incidentally, if at all, outside of New England.

33.   Less than ten percent (10%) of the defendants' gross revenues derived from transactions involving interstate commerce outside of Massachusetts.

34.   Section VII of the Franchise Agreement (and other similar language in other Franchise Agreements) restricts the plaintiffs' purchases from suppliers and of supplies and suppliers to ones previously approved by the defendant HDAI.

35.   Either on its own or acting in concert with or on the advice of the co-defendants, HDAI has refused to approve suppliers of non-proprietary products and supplies that sell standard items (including but not limited to sugar and flour). The tying and tied products are distinct products; the Franchise Agreement establishes an express or implied tie; by virtue of the Franchise Agreement and otherwise; HDAI has sufficient economic power in the market to distort the choices of the franchisees with respect to the tied products; and the tie forecloses a substantial amount of commerce in the market for the tied products.

36.   On information and belief, the defendants have restricted the use of suppliers to those who charge higher prices to franchisees, including the Named Plaintiffs, and that the defendants or their officers, agents or employees receive kick-backs, bonuses or other incentives as inducements or in consideration thereof.

37.   The conduct of the defendants, as hereinabove set forth in this Complaint, was oppressive and/or unconscionable, was in violation of Mass. General Laws c. 93, §§ 1, et seq., and the Sherman Act and Clayton Act, and was done with a malicious intent to injure the plaintiffs.

38.   As a direct and proximate result of the defendants' conduct as hereinabove set forth, the plaintiffs have sustained damages and injuries.

WHEREFORE, the Sub-Class I Plaintiffs pray judgment against the defendants HDAI and BRI, jointly and severally, together with treble damages, interest, costs and attorneys' fees.

WHEREFORE, the Sub-Class II Plaintiffs pray judgment against all of the defendants, jointly and severally, together with treble damages, interest, costs and attorneys' fees.

## COUNT III (breach of contract)

39.   The plaintiffs repeat and reaver paragraphs one through 38, inclusive, of this complaint as if expressly rewritten and set forth herein

40.   The defendants' conduct as hereinabove set forth constitutes per se illegal "tie-ins" in violation of the Sherman Anti-Trust Act and the Clayton Act. 15 U.S.C. §§ 1 and 14.

6

Former #38 moved to #11.

41. Section X of the said Franchise Agreement (and other similar language in other Franchise Agreements) requires the Named Plaintiffs (and other franchisees) to contribute to an Advertising Fund to be expended by the defendant, HDAI, on advertising, advertising time, and other related items and materials.

42. The defendants breached its contracts, including but not limited to, by failing to provide the plaintiffs with the "Advertising Fund Policy Statement"; by failing to provide an accounting of the receipts and expenditures of the Advertising Fund; and by failing or refusing to use the monies in the Advertising Fund for advertising of Honey Dew Donuts, its products, locations, or other promotional items that would benefit the plaintiffs.

43. On information and belief, the defendants have failed or refused to use a significant portion of the monies in the Advertising Fund for advertising of Honey Dew Donuts, its products, locations, or other promotional items that would benefit the plaintiffs.

44. The plaintiffs have complied with all conditions precedent.

45. As a direct and proximate result of the defendants' breach of contract as hereinabove set forth, the plaintiffs have sustained damages.

WHEREFORE, the Sub-Class I Plaintiffs pray judgment against the defendants HDAI and BRI, jointly and severally, together with interest, costs and attorneys' fees.

WHEREFORE, the Sub-Class II Plaintiffs pray judgment against all of the defendants, jointly and severally, together with interest, costs and attorneys' fees.

## COUNT IV (breach of implied covenant of good faith and fair dealing)

46. The plaintiffs repeat and reaver paragraphs one through 45, inclusive, of this complaint as if expressly rewritten and set forth herein.

47. In every Massachusetts contract there is an implied covenant of good faith and fair dealing.

48. The Sub-Class I plaintiffs all entered into contracts with the defendant, HDAI, viz., Franchise Agreements, which contains per se illegal provisions, including but not limited to illegal tie-in provisions in violation of the Sherman Act and the Clayton Act, 15 U.S.C. §§ 1 and 14, which HDAI seeks to enforce against the plaintiffs, to the detriment of the plaintiffs.

49. The Sub-Class II plaintiffs all entered into contracts with the defendants HDAI and BII, viz., Franchise Agreements, which contains per se illegal provisions, including but not limited to illegal tie-in provisions in violation of the Sherman Act and the Clayton Act, 15 U.S.C. §§ 1 and 14, which HDAI and BII seek to enforce against the plaintiffs, to the detriment of the plaintiffs

7

50.     In addition, in other respects, the defendants acted in bad faith and breached said Franchise Agreement, causing the plaintiffs to sustain damages.

WHEREFORE, the Sub-Class I Plaintiffs pray judgment against the defendants HDAI and BRI, jointly and severally, together with interest, costs and attorneys' fees.

WHEREFORE, the Sub-Class II Plaintiffs pray judgment against all of the defendants, jointly and severally, together with interest, costs and attorneys' fees.

## COUNT V (conversion)

51.     The plaintiffs repeat and reaver paragraphs one through 50, inclusive, of this complaint as if expressly rewritten and set forth herein.

52.     The plaintiffs have made substantial contributions to the defendant HDAI's Advertising Fund under Section X of the Franchise Agreement or other similar provisions of other Franchise Agreements.

53.     The defendant HDAI converted property of the plaintiffs and intentionally or wrongfully exercised acts of control, ownership or dominion of the personal property, including but not limited to, by failing to provide an accounting of the receipts and expenditures of the Advertising Fund; and by failing or refusing to use the monies in the Advertising Fund for advertising of Honey Dew Donuts, its products, locations, or other promotional items that would benefit the plaintiffs.

54.     On information and belief, BRI as the managing entity for HDAI, has caused or contributed to the cause of such conduct.

55.     As a direct and proximate result of HDAI's wrongful conduct as hereinabove set forth, the plaintiffs have sustained damages.

WHEREFORE, the plaintiffs pray judgment against the defendants HDAI and BII, together with interest, costs and attorneys' fees.

## COUNT VI (accounting)

56.     The plaintiffs repeat and reaver paragraphs one through 55, inclusive, of this complaint as if expressly rewritten and set forth herein.

57.     The plaintiffs have made and continue to make, substantial contributions to the defendant HDAI's Advertising Fund under Section X of the Franchise Agreement or other similar provisions of other Franchise Agreements.

58.     HDAI (and BRI as the manager of HDAI) have not accounted for the plaintiffs' contributions to the defendant HDAI's Advertising Fund under Section X of the

8

Franchise Agreement or other similar provisions of other Franchise Agreements.

WHEREFORE, the plaintiffs pray judgment as follows:

    I.  That HDAI and BRI be ordered to make a full and complete accounting of all money and proceeds, including but not limited to all disbursements of the Advertising Fund.

    II.  That the amount belonging to the plaintiffs from the defendants be ascertained and determined, and that the defendants be ordered and enjoined to turn over and pay the same to the plaintiffs.

    III.  That the plaintiffs be awarded costs, including attorneys' fees.

    IV.  For such other relief as the Court deems just.

## COUNT VII (c. 93A)

59.    The plaintiffs repeat and reaver paragraphs one through 58, inclusive, of this complaint as if expressly rewritten and set forth herein.

60.    Section VII of the Franchise Agreement (and other similar language in other Franchise Agreements) restricts the plaintiffs' purchases from suppliers and of supplies and suppliers to ones previously approved by the defendant HDAI.

61.    Either individually or acting through or with BRI and BII, HDAI has refused to approve suppliers of non-proprietary products and supplies that sell standard items (including but not limited to sugar and flour). The tying and tied products are distinct products; the Franchise Agreement establishes an express or implied tie; by virtue of the Franchise Agreement and otherwise; HDAI has sufficient economic power in the market to distort the choices of the franchisees with respect to the tied products; and the tie forecloses a substantial amount of commerce in the market for the tied products.

62.    On information and belief, the defendants has restricted the use of suppliers to those who charge higher prices to franchisees, including the Named Plaintiffs, and that the defendants or their officers, agents or employees receive kick-backs, bonuses or other incentives as inducements or in consideration thereof.

63.    The defendants' conduct as hereinabove set forth constitutes per se illegal "tie-ins" in violation of the Sherman Anti-Trust Act and the Clayton Act. 15 U.S.C. §§ 1 and 14.

64.    The Offering Circular did not contain a list of the names and addresses of each person from whom is directly or indirectly required by the franchisor to purchase, lease or rent certain services, supplies, products, inventories, signs, fixtures, or equipment relating to the establishment or the operation of the franchise business as required by

9

16 C.F.R. §436.1(a)(10).

65.  The Offering Circular did not contain a description of the basis for calculating, and, if such information is readily available, the actual amount of, any revenue or other consideration to be received by the franchisor or persons affiliated with the franchisor from suppliers to the prospective franchisee in consideration for goods or services which the franchisor requires or advises the franchisee to obtain from such suppliers, as required by 16 C.F.R. §436.1(a)(11).

66.  The Offering Circular did not contain the total number of company-owned outlets operating at the end of the preceding fiscal year as required by 16 C.F.R. §436.1(a)(16)(ii).

67.  As a condition for obtaining the consent of the defendants to sell, transfer or terminate the franchise, a franchisee was required to execute a release in favor of the defendants as a condition for permission, without adequate consideration.

68.  The conduct of the defendants, as hereinabove set forth in this Complaint, was oppressive and/or unconscionable, was violations of Mass. General Laws c. 93A, §§ 2 and 11, and the regulations promulgated thereunder, and was knowing and willful.

69.  As a direct and proximate result of the defendants' conduct as hereinabove set forth, the plaintiffs have sustained damages and injuries.

WHEREFORE, the Sub-Class I Plaintiffs pray judgment against the defendants HDAI and BRI, jointly and severally, together with treble damages, interest, costs and attorneys' fees.

WHEREFORE, the Sub-Class II Plaintiffs pray judgment against all of the defendants, jointly and severally, together with treble damages, interest, costs and attorneys' fees.

## COUNT VIII (declaratory judgment)

70.  The plaintiffs repeat and reaver paragraphs one through 69, inclusive, of this complaint as if expressly rewritten and set forth herein.

71.  The Franchise Agreement requires the Named Plaintiffs to buy from designated suppliers at above-market prices, even though the defendant HDAI has claimed the franchisees will be paying below-market prices. HDAI admits receiving payments from the designated Suppliers in exchange for such designations. The plaintiffs allege this constitutes illegal tie-ins, while HDAI alleges this is not unlawful.

72.  HDAI also denies that it has acted improperly with regard to the Advertising Fund and other provisions of the Franchise Agreement (and similar language in other franchise agreements).

73.  As a condition for obtaining the consent of the defendants to sell, transfer or terminate

10

the franchise, a franchisee was required to execute a release in favor of the defendants as a condition for permission, without adequate consideration.

74. The plaintiffs contend that the releases are void and unenforceable, as they were obtained by conduct which was in violation of G.L. c. 93A and the regulations promulgated thereunder.

75. As a result, there is an actual controversy which is ripe for adjudication.

WHEREFORE, the plaintiffs pray judgment as follows:

    I.     For a judgment of the Court, interpreting the Franchise Agreement, and declaring the rights and responsibilities of the parties.

    II.     That the defendant be enjoined and restrained from utilizing any contributions to the Advertising Fund for any purpose other than advertising for the direct benefit of the plaintiffs.

    III.     For a judgment of the Court, declaring that the releases executed by the plaintiffs are void and unenforceable.

    IV.     For costs, including attorneys' fees.

    V.     For such other relief as the Court deems just.

> The plaintiffs,
> By their attorney,
>
>
> Jeffrey D. Woolf
> BBO #534360
> JEFFREY D. WOOLF, ESQ., P.C.
> 21 Merchants Row, 5th Floor
> Boston, MA 02109-2005
> (617) 973-9022



## Jack Mikels and Associates

| | |
|---|---|
| **From:** | <ECFnotice@mad.uscourts.gov> |
| **To:** | <CourtCopy@mad.uscourts.gov> |
| **Sent:** | Thursday, April 22, 2004 9:30 AM |
| **Subject:** | Activity in Case 1:03-cv-10965-RCL B & M Donuts, Inc. et al v. Honey Dew Associates, Inc. "Order on Motion for Leave to File" |

\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

United States District Court
District of Massachusetts

Notice of Electronic Filing
The following transaction was received from Stanhope, Don entered on 4/22/2004 at 9:30 AM EDT and filed on 4/21/2004

Case Name: B & M Donuts, Inc. et al v. Honey Dew Associates, Inc.
Case Number: 1:03-cv-10965 https://ecf.mad.uscourts.gov/cgi-bin/DktRpt.pl?86338

Document Number:
Copy the URL address on the line below into the location bar of your Web browser to view the document:

Docket Text:
Judge Reginald C. Lindsay : Electronic ORDER entered granting [37] Assented to Motion for Leave to File Their Second Amended Complaint (Stanhope, Don)

The following document(s) are associated with this transaction:

1:03-cv-10965 Notice will be electronically mailed to:
Kevin R. McCarthy kemccar68@comcast.net

Jack J. Mikels                           jmikels@gis.net

Jeffrey D. Woolf                         jdwoolf@yahoo.com

1:03-cv-10965 Notice will not be electronically mailed to:
William E. Gens
One Devonshire Place
Suite 1602
Boston, MA 02109

4/22/2004

## REINSTATEMENT AGREEMENT

Now come Bowen Investment, Inc. ("BII"), a Massachusetts corporation with a principal place of business at 2 Taunton Street, Plainville, MA, C Nineseven, Inc. ("C97"), a Rhode Island corporation doing business at 355 Broad Street, Central Falls, RI and Vincenzo Ciummo and Sharon Ciummo, both of 1060 Oaklawn Avenue, Cranston, RI 02920 (collectively, the "Ciummos"), and state as follows:

### Recitals

WHEREAS, BII is engaged in the business of operating and franchising coffee and donut shops in Rhode Island known as Honey Dew Donuts® Shops;

WHEREAS, C97 is a franchisee of BII, by its purchase of the Honey Dew Donuts® Shop at 355 Broad Street, Central Falls, RI from Marathon Donuts, Inc., and in connection therewith, C97 executed a Franchise Agreement an Agreement Regarding Transfer of Honey Dew Donut Franchise, both dated January 11, 1999 (collectively, the "Franchise Agreement"),

WHEREAS, in connection with the Franchise Agreement, C97 and the Ciummos executed a Covenant Not to Compete and a Covenant to Protect Trade Secrets and Proprietary Information, both dated January 11, 1999 (collectively, the "Covenants");

WHEREAS, in connection with the Franchise Agreement, the Ciummos executed a Liability Agreement dated January 11, 1999 (the "Liability Agreement"), by which they are jointly and severally liable for the obligations of C97 to BII;.

WHEREAS, pursuant to the Franchise Agreement, C97 is required to operate in compliance with the provisions of the Operational Excellence Procedure Manual in effect from time to time and to maintain passing grades inspections in accordance with then-applicable store inspection policies;

WHEREAS, C97 is in default of his obligations to BII for failing to pass various store inspection, which has resulted in BII's forwarding through counsel a Notice of Default on January 5, 2004;

WHEREAS, C97 failed to cure the default specified in said Notice within the time period provided in said Notice and in the Franchise Agreement;

WHEREAS, on February 17, 2004, BII, though counsel, served C97 with a Termination Notice due to its failure to cure its default;

WHEREAS, C97 and the Ciummos have requested that the franchise be reinstated and BII is willing to do so, subject to the provisions hereof.

1

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1.      The parties acknowledge and agree that the foregoing Recitals are true and accurate and the said Recitals are hereby incorporated herein by reference.

2.      The provisions of this Agreement shall supersede the provisions of the Franchise Agreement.

3.      Inspections.

(a)     Contemporaneously with the execution hereof, C97 has paid BII the sum of $750.00 for the cost of four inspections, $300.00 for additional services by BII's inspector, and $900.00 for legal fees in connection with its defaults and this Agreement.

(b)     Following execution, BII shall inspect C97's (the "Initial Inspection").

(i) If the store does not receive a passing grade, C97 shall pay BII $150.00 for a follow-up inspection, and the store will be re-inspected no less than five days thereafter. If the store does not pass the re-inspection, or if the additional payment is not made, then the Sale Provisions hereof shall become effective;

(ii)    If C97 receives a passing score on the inspection or re-inspection provided in subparagraph (b)(i), then the Franchise Agreement shall be deemed reinstated, except that, for a one year probationary period (the "Probationary Period") from the date of the passing grade, if C97 fails any subsequent inspection, then C97 shall pay BII $300.00 for the cost of the inspection and for a re-inspection and the store will be re-inspected no less than five days thereafter;

(iii) If C97 receives a passing score on the re-inspection provided in subparagraph (b)(ii), the Probationary Period shall be extended to run one year fro the date of said passing score;

(iv) If C97 does not receive a passing store on any re-inspection pursuant to either section (b)(ii) or (b)(iii), or if any payment required hereunder is not made, then: (a) BII and its agents shall be given access to the Premises to clean, repair and restore C97's business premises to its reasonable satisfaction and C97 shall immediately pay the charges incurred for such work; and (b) C97 shall immediately upon completion for the work actively market its business for sale, utilize its best efforts to sell the business and shall enter into a Purchase and Sale Agreement, to a Buyer reasonably acceptable to BII, within 140 days and must complete the sale within 180 days (the "Sale Period");

(v)     During the sale period, C97 shall pay all sums due to BII when due and shall pass any inspections performed in the ordinary course of BII's business;

2

(vi)    Should C97 default in any of the provisions hereof, then it shall relinquish the business to BII (a "Relinquishment"). At the time of any Relinquishment hereunder, C97 shall remain liable to BII for any amounts owed through Relinquishment. The Relinquishment shall be deemed full satisfaction of any and all post-termination monetary obligations of C97 to BII. After Relinquishment, the Covenants shall remain in full force and effect as if the franchise expired as of the date of Relinquishment. As utilized herein, a "Relinquishment" shall mean that C97 shall give the keys to the premises to BII and place BII in possession of the premises, and give BII possession and title to all equipment and inventory therein;

(c)    All inspections hereunder shall be performed by BII's independent contractor and shall be consistent with the inspection standards applicable to each of BII's comparable franchises. At the time of each inspection, C97 or its employees shall be put in possession of a copy of the report, consistent with BII's current procedures.

4.    This agreement shall not be interpreted or construed as a waiver of any default in the operation of the shops or violation of the Franchise Agreement which may have existed or which may exist as of the date hereof, other than as provided herein.

5.    C97 and the Ciummos hereby release and discharge BII, Robert Bowen and Honey Dew Associates, Inc., their agents, servants, attorneys, employees and officers from any and all actions and causes of action, claims or demands for damages, costs, loss of use, loss of services, expenses, compensation, consequential damage or any other thing whatsoever on account of, or in any way growing out of transactions between the parties including, without limitation, those pertaining arising out of, or in any way relating to transactions between the parties including, without limitation, those pertaining to the Franchise Agreement, from the beginning of the world to this date including, without limitation, those pertaining arising out of, or in any way relating to the transfer and/or operation of C97's business (the "Franchise") and/or the Franchise Agreement, including, without limitation, the purchase, sale and/or operation of the Franchise, dealings concerning prospective franchises, dealings concerning transfer or proposed transfer of the Franchise, and all other claims of any nature whatsoever relating to the Franchise, amd claims for breach of contract, breach of fiduciary responsibilities, breach of implied or express covenants, claims relating to HDA's Advertising Fund, violations or alleged violations of Mass. G.L. c. 93A, violations or alleged violations of any law relating to franchising and/or the relationship of the parties hereto, and specifically releasing the claims alleged by Seller against HDA in United States District Court civil action no: 03-10965-RCL, which, if filed, shall be dismissed by the Seller, with prejudice, and Seller acknowledges and agrees that it shall not participate in said action, either as a Plaintiff or a class member.

6.    C97 and the Ciummos hereby ratify and confirm the Franchise Agreement and the Covenants and agree that such contracts are valid and binding obligations, enforceable in accordance with their terms, and are in full force and effect.

3

7.     Each of the parties hereto acknowledges that this Agreement has been entered into of his, her or its own volition with full knowledge of the facts as to their respective rights and liabilities and that each is individually familiar and in agreement with these various terms and provisions, and each of the parties hereto further acknowledges and represents that this Agreement is, in all respects, fair, reasonable and proper and that it correctly reflects the wishes and intentions of each party and that each party has had an opportunity to be represented by independent counsel.

8.     This agreement shall be governed and construed pursuant to the laws of the Commonwealth of Massachusetts.

Executed under seal in duplicate, each of which shall be deemed an original, this _____ day of _____, 2004.

Bowen Investment, Inc.                      C Nineseven, Inc.

By:_____               By:_____
Duly Authorized                               Duly authorized

_____               _____
Vincenzo Ciummo                            Sharon Ciummo

f:/amik/bii/forms/rein-Ciummo

4