UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C. A. NO. 04-10702-RWZ

BOWEN INVESTMENT, INC. and
HONEY DEW ASSOCIATES, INC.
          Plaintiffs,

v.

C-NINE SEVEN, INC., VINCENZO CIUMMO
AND SHARON CIUMMO,
          Defendants.

## SECOND AFFIDAVIT OF ROBERT P. BOWEN

I, Robert P. Bowen, on oath, do hereby depose and state as follows:

1    I am the President and Treasurer of Bowen Investment, Inc. ("BII"). BII is a corporation engaged in the franchising of Honey Dew Donuts® Shops in Rhode Island. I make the foregoing statements on my personal knowledge.

2.    Pursuant to a Franchise Agreement and related documentation (the "Franchise Documents") dated January 11, 1999, C-Nine Seven, Inc. ("C97"), BII granted C97 a franchise to operate a Honey Dew Donuts® Shop in Central Falls, Rhode Island. This transaction was part of a deal by which C97 purchased the business from a prior franchisee. At all relevant times, the Franchise Agreement has included a requirement that C97 pass BII's inspections. The Franchise Documents include a notice and cure period for a failed inspection and, if a passing grade is not obtained on a re-inspection, the franchise may be terminated by written notice.

3. I authorized issuance of a Notice of Default to C-Nine Seven, Inc. ("C97") following my receipt of an inspection report of an inspection dated December 18, 2003, which C97 had failed.

4. Following expiration of the cure period, I obtained a re-inspection report dated February 3, 2004, which C97 had also failed.

5. I authorized issuance of a Notice of Termination, which issued February 17, 2004, due to the failed re-inspection.

6. After the franchise was terminated, I requested a meeting with the Ciummos to arrange a mutually acceptable reinstatement agreement. I authorized the letters dated February 26, 2004 and March 3, 2004, copies of which are attached hereto as Exhibits "A" and "B".

7. At no time when these events occurred was I aware that BII would be named a defendant in the class action litigation pending in the Federal District Court for Massachusetts against Honey Dew Associates, Inc., nor was I aware that C97 intended to be added as a plaintiff in that action. BII wasn't notified that BII might be added as a defendant to the putative class action litigation prior to March 11, 2004. BII was not notified that C97 might be a plaintiff in the class action litigation before March 30, 2004.

8. I met with Mr. Ciummo in April, 2004 and presented him with a proposed Reinstatement Agreement, a copy of which is attached hereto as Exhibit "C".

Signed under the pains and penalties of perjury this 3 day of November, 2005.

_____
Robert P. Bowen

**EXHIBIT "A"**

# JACK MIKELS & ASSOCIATES

1 BATTERYMARCH PARK • SUITE 309 • QUINCY, MASSACHUSETTS 02169-7454
Telephone: (617) 472-5600 • Telecopier: (617) 472-5875 • E-Mail: jmikels@gis.net

JACK J. MIKELS
ROCHELLE NELSON MIKELS
MICHAEL A. WIRTZ
ATTORNEYS AT LAW

February 26, 2004

Mrs. Sharon Ciummo
c/o Honey Dew Donuts
55 Broad Street
Central Falls, RI 02863

Dear Mrs. Ciummo:

Thank you for your letter of February 19. I was sorry to hear of the situation of your husband's mother.

I have discussed the situation with Mr. Bowen. Your letter does not indicate when your husband would be returning, but Mr. Bowen is concerned over the condition of this store and a failed inspection is a situation which requires immediate attention. Mr. Bowen is willing to sit down with you immediately and your husband can be included if he is back. As your business has been formerly terminated, it will be necessary to work out a Reinstatement Agreement which will allow you to continue as a Honey Dew franchisee, but which will also require you to pass your inspections.

Please contact Mr. Bowen directly to arrange such a meeting.

Very truly yours,

Jack J. Mikels

JJM/ela
cc:   Robert P. Bowen, President

f/ev/j/04/022504

# JACK MIKELS & ASSOCIATES

1 BATTERYMARCH PARK • SUITE 309 • QUINCY, MASSACHUSETTS 02169-7454
Telephone: (617) 472-5600 • Telecopier: (617) 472-5875 • E-Mail: jmikels@gis.net

EXHIBIT "B"

JACK J. MIKELS
ROCHELLE NELSON MIKELS
MICHAEL A. WIRTZ
*ATTORNEYS AT LAW*

March 3, 2004

Mr. and Mrs. Vincenzo Ciummo
c/o Honey Dew Donuts
333 Broad Street
Central Falls, RI 02863

Dear Mr. and Mrs. Ciummo:

    I received Mrs. Ciummo's written note that Mr. Ciummo is back in town and will deal with the current termination situation. It is imperative that one or both of you contact Mr. Bowen immediately, because if a Reinstatement Agreement cannot be worked out, this store operation will have to terminate.

Very truly yours,

Jack J. Mikels

JJM/ela
cc:   Robert P. Bowen, President

f/ev/j/04/030304



## REINSTATEMENT AGREEMENT

Now come Bowen Investment, Inc. ("BII"), a Massachusetts corporation with a principal place of business at 2 Taunton Street, Plainville, MA, C Nineseven, Inc. ("C97"), a Rhode Island corporation doing business at 355 Broad Street, Central Falls, RI and Vincenzo Ciummo and Sharon Ciummo, both of 1060 Oaklawn Avenue, Cranston, RI 02920 (collectively, the "Ciummos"), and state as follows:

### Recitals

WHEREAS, BII is engaged in the business of operating and franchising coffee and donut shops in Rhode Island known as Honey Dew Donuts® Shops;

WHEREAS, C97 is a franchisee of BII, by its purchase of the Honey Dew Donuts® Shop at 355 Broad Street, Central Falls, RI from Marathon Donuts, Inc., and in connection therewith, C97 executed a Franchise Agreement an Agreement Regarding Transfer of Honey Dew Donut Franchise, both dated January 11, 1999 (collectively, the "Franchise Agreement"),

WHEREAS, in connection with the Franchise Agreement, C97 and the Ciummos executed a Covenant Not to Compete and a Covenant to Protect Trade Secrets and Proprietary Information, both dated January 11, 1999 (collectively, the "Covenants");

WHEREAS, in connection with the Franchise Agreement, the Ciummos executed a Liability Agreement dated January 11, 1999 (the "Liability Agreement"), by which they are jointly and severally liable for the obligations of C97 to BII;.

WHEREAS, pursuant to the Franchise Agreement, C97 is required to operate in compliance with the provisions of the Operational Excellence Procedure Manual in effect from time to time and to maintain passing grades inspections in accordance with then-applicable store inspection policies;

WHEREAS, C97 is in default of his obligations to BII for failing to pass various store inspection, which has resulted in BII's forwarding through counsel a Notice of Default on January 5, 2004;

WHEREAS, C97 failed to cure the default specified in said Notice within the time period provided in said Notice and in the Franchise Agreement;

WHEREAS, on February 17, 2004, BII, though counsel, served C97 with a Termination Notice due to its failure to cure its default;

WHEREAS, C97 and the Ciummos have requested that the franchise be reinstated and BII is willing to do so, subject to the provisions hereof.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1. The parties acknowledge and agree that the foregoing Recitals are true and accurate and the said Recitals are hereby incorporated herein by reference.

2. The provisions of this Agreement shall supersede the provisions of the Franchise Agreement.

3. <u>Inspections</u>.

(a) Contemporaneously with the execution hereof, C97 has paid BII the sum of $750.00 for the cost of four inspections, $300.00 for additional services by BII's inspector, and $900.00 for legal fees in connection with its defaults and this Agreement.

(b) Following execution, BII shall inspect C97's (the "Initial Inspection").

(i) If the store does not receive a passing grade, C97 shall pay BII $150.00 for a follow-up inspection, and the store will be re-inspected no less than five days thereafter. If the store does not pass the re-inspection, or if the additional payment is not made, then the Sale Provisions hereof shall become effective;

(ii) If C97 receives a passing score on the inspection or re-inspection provided in subparagraph (b)(i), then the Franchise Agreement shall be deemed reinstated, except that, for a one year probationary period (the "Probationary Period") from the date of the passing grade, if C97 fails any subsequent inspection, then C97 shall pay BII $300.00 for the cost of the inspection and for a re-inspection and the store will be re-inspected no less than five days thereafter;

(iii) If C97 receives a passing score on the re-inspection provided in subparagraph (b)(ii), the Probationary Period shall be extended to run one year fro the date of said passing score;

(iv) If C97 does not receive a passing store on any re-inspection pursuant to either section (b)(ii) or (b)(iii), or if any payment required hereunder is not made, then: (a) BII and its agents shall be given access to the Premises to clean, repair and restore C97's business premises to its reasonable satisfaction and C97 shall immediately pay the charges incurred for such work; and (b) C97 shall immediately upon completion for the work actively market its business for sale, utilize its best efforts to sell the business and shall enter into a Purchase and Sale Agreement, to a Buyer reasonably acceptable to BII, within 140 days and must complete the sale within 180 days (the "Sale Period");

(v) During the sale period, C97 shall pay all sums due to BII when due and shall pass any inspections performed in the ordinary course of BII's business;

2

(vi) Should C97 default in any of the provisions hereof, then it shall relinquish the business to BII (a "Relinquishment"). At the time of any Relinquishment hereunder, C97 shall remain liable to BII for any amounts owed through Relinquishment. The Relinquishment shall be deemed full satisfaction of any and all post-termination monetary obligations of C97 to BII. After Relinquishment, the Covenants shall remain in full force and effect as if the franchise expired as of the date of Relinquishment. As utilized herein, a "Relinquishment" shall mean that C97 shall give the keys to the premises to BII and place BII in possession of the premises, and give BII possession and title to all equipment and inventory therein;

(c) All inspections hereunder shall be performed by BII's independent contractor and shall be consistent with the inspection standards applicable to each of BII's comparable franchises. At the time of each inspection, C97 or its employees shall be put in possession of a copy of the report, consistent with BII's current procedures.

4. This agreement shall not be interpreted or construed as a waiver of any default in the operation of the shops or violation of the Franchise Agreement which may have existed or which may exist as of the date hereof, other than as provided herein.

5. C97 and the Ciummos hereby release and discharge BII, Robert Bowen and Honey Dew Associates, Inc., their agents, servants, attorneys, employees and officers from any and all actions and causes of action, claims or demands for damages, costs, loss of use, loss of services, expenses, compensation, consequential damage or any other thing whatsoever on account of, or in any way growing out of transactions between the parties including, without limitation, those pertaining arising out of, or in any way relating to transactions between the parties including, without limitation, those pertaining to the Franchise Agreement, from the beginning of the world to this date including, without limitation, those pertaining arising out of, or in any way relating to the transfer and/or operation of C97's business (the "Franchise") and/or the Franchise Agreement, including, without limitation, the purchase, sale and/or operation of the Franchise, dealings concerning prospective franchises, dealings concerning transfer or proposed transfer of the Franchise, and all other claims of any nature whatsoever relating to the Franchise, amd claims for breach of contract, breach of fiduciary responsibilities, breach of implied or express covenants, claims relating to HDA's Advertising Fund, violations or alleged violations of Mass. G.L. c. 93A, violations or alleged violations of any law relating to franchising and/or the relationship of the parties hereto, and specifically releasing the claims alleged by Seller against HDA in United States District Court civil action no: 03-10965-RCL, which, if filed, shall be dismissed by the Seller, with prejudice, and Seller acknowledges and agrees that it shall not participate in said action, either as a Plaintiff or a class member.

6. C97 and the Ciummos hereby ratify and confirm the Franchise Agreement and the Covenants and agree that such contracts are valid and binding obligations, enforceable in accordance with their terms, and are in full force and effect.

3

7.  Each of the parties hereto acknowledges that this Agreement has been entered into of his, her or its own volition with full knowledge of the facts as to their respective rights and liabilities and that each is individually familiar and in agreement with these various terms and provisions, and each of the parties hereto further acknowledges and represents that this Agreement is, in all respects, fair, reasonable and proper and that it correctly reflects the wishes and intentions of each party and that each party has had an opportunity to be represented by independent counsel.

8.  This agreement shall be governed and construed pursuant to the laws of the Commonwealth of Massachusetts.

Executed under seal in duplicate, each of which shall be deemed an original, this _____ day of _____, 2004.

| Bowen Investment, Inc. | C Nineseven, Inc. |
|---|---|
| By:_____ | By:_____ |
| Duly Authorized | Duly authorized |
| | |
| _____ | _____ |
| Vincenzo Ciummo | Sharon Ciummo |

f:/amik/bii/forms/rein-Ciummo

4