UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C. A. NO. 04-10702-RWZ

BOWEN INVESTMENT, INC. and
HONEY DEW ASSOCIATES, INC.
                Plaintiffs,
v.

C-NINE SEVEN, INC., VINCENZO CIUMMO AND
SHARON CIUMMO,
                Defendants.

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is an action by a franchisor against a terminated franchisee for damages. Plaintiff Bowen Investment, Inc. ("BII") franchises Honey Dew Donuts® Shops in Rhode Island.[1] Defendant C-Nine Seven, Inc. ("C97") is a Rhode Island corporation which was a franchisee of BII.[2] C97 was terminated by BII as a franchisee per a written Notice of Termination issued February 17, 2004. Count I of the Verified Complaint seeks injunctive relief and damages arising out of violations of trademark law due to the Defendant's continuation in business, post-termination. Count II of the Verified Complaint seeks contractual post-termination damages.

Defendants contested the validity of the Notice of Termination and filed counterclaims, alleging that Plaintiffs sought to terminate the franchise in retaliation for C97's participation in a putative class action claim against BII and Honey Dew Associates, Inc. ("HDA"). As detailed in Plaintiff's Motion for Summary Judgment, this defense is invalid as a matter of law, since

---

[1] Plaintiff Honey Dew Associates, Inc. ("HDA") is the owner of the Honey Dew name, the system under which the shops operate, and the trademark and proprietary data related thereto (the "Marks").

[2] C97's owners, Vincenzo and Sharon Ciummo are defendants under a Liability Agreement by which they agreed to joint and several liability for the obligations of their corporation to BII.

neither HDA nor BII were aware of C97's participation in the putative class action claim until *after* termination of the franchise.

In Defendants' Motion for Summary Judgment, Defendants seek a determination that Plaintiffs' damage claim cannot be sustained as a matter of law. Count I of the Verified Complaint includes claims for injunctive relief to stop and Lanham Act damages arising out of Defendant's post-termination use of the trademarks and proprietary system (collectively, the "Proprietary Marks") of Honey Dew Donuts®. Count II of the Verified Complaint seeks contractual post-termination damages through the intended expiration date of the Defendants' Franchise Agreement. Defendants assert a potpourri of arguments in support of their Motion, none of which is meritorious. For the reasons set forth herein, Defendants' Motion for Summary Judgment must be denied.

### (1) Plaintiffs did not Impliedly License Post-Termination use of the Marks

Defendants contend that Count I Lanham Act damages cannot be awarded, as a matter of law because their post-termination use of the Marks was "impliedly licensed" by Plaintiffs. Defendants' Memorandum, at p.4. The cases cited by the Defendants in which an implied license was found to have existed are simply inapplicable where there is an express contract governing the relationship between the parties.[3]

The Franchise Agreement between BII and C97 included the following provisions:

> Upon expiration or termination of this Agreement;
> 1.   You must immediately discontinue the use of all Proprietary Marks.

Franchise Agreement, §XXI(A)(1), Exhibit B to Verified Complaint.

---

[3] *Brithright v. Birthright, Inc.,* 827 F.Supp 1114 (D. NJ 1993), erroneously cited by Defendants as 827 F.Supp.114, held that the implied license found by the court had been terminated by written notice of termination, a fact not mentioned by Defendants.

Defendants contend that they were equitably impliedly licensed to use the Proprietary Marks post-termination because negotiations for a possible reinstatement were ongoing. This argument turns equity on its head by penalizing the Plaintiffs for offering to negotiate reinstatement. Additionally, this argument contradicts the express terms of the contract which not only prohibits post-termination use of the Proprietary Marks, but also expressly provides for what happens if use of the Proprietary Marks does not cease:

> Your continued use of the Proprietary Marks licensed hereunder including, without limitation, the name "Honey Dew Donuts™" shall constitute willful trademark infringement by you.

Id.

Defendants argue that it would "defeat public policy to require a franchisee to renegotiate with the Lanham Act axe to fall, if the negotiations fail" Defendants' Memorandum, at 6. This argument ignores the obvious- Defendants have *already* been terminated. They created, by their own misconduct, the situation of which they complain. Then, they seek to benefit from their own refusal to accept the offered reinstatement, by seeking the assistance of a court of equity to preclude a damage claim of their own making. Equity does not work in such a fashion.

Nor do the Defendants' properly account for the damages to the Plaintiffs' Proprietary Marks from their misconduct. They argue that since they purchased their products from another Honey Dew Donuts® Shop, "the quality of the product was assured" and no damages accrued. Defendants' Memorandum at 5. Defendants' had been terminated for failing Plaintiffs' inspections and for operations deficiencies. Verified Complaint at ¶¶14-18. The fact that the products being sold were properly prepared does not diminish the

damage caused by sales of such product in a substandard shop. The fact that the Plaintiffs were willing, as part of a reinstatement, to allow Defendants to correct their deficiencies, does not imply that no damages arose from continued operation without those deficiencies being fixed. Moreover, it is the loss of control over the Proprietary Marks which is at the heart of an infringement case. As soon as the Franchise Agreement was terminated, the Plaintiffs were without the power to enforce their rules and regulations regarding the use of the Proprietary Marks. The Defendants held themselves out as a duly licensed representative of the chain when, in fact, they were not.

The Defendants' argument that the Termination Notice and the express terms of the Franchise Agreement did not preclude their post-termination right to use the Proprietary Marks is not meritorious. Moreover, even if use of the Proprietary Marks were found to be implicitly permitted during settlement negotiations, Defendants concede that they continued to operate the shop under the Proprietary Marks from the time service of process of this case was made in May until they closed the shop at the end of June.[4] Thus, their argument of an implied license goes to the period for which damages may be granted, not to their liability. Their Motion for Summary Judgment must be denied.

**(2) Plaintiffs' did not Unduly Delay Enforcement of Trademark Rights**

Defendants argue that no trademark damages can be awarded, as a matter of law, because of Plaintiffs' one month delay between filing and service of process. Defendants' Memorandum at p. 7. The delay in service was due to settlement negotiations. The lawsuit was filed following BII's unsuccessful efforts to meet with Mr. Ciummo. Third Affidavit of

---

[4] At the status conference on June 29, the Court suggested that Defendants could avoid continuing potential liability for trademark infringement by cessation of operations under the Proprietary Marks, a suggestion followed by Defendants. See Transcript, on file.

Robert Bowen at ¶6. After the lawsuit was filed, the meeting was arranged and BII presented Mr. Ciummo with the proposed Reinstatement Agreement. BII waited one month and, after receiving no acceptance, counterproposal or other response, made service of process. Id. at ¶7. Defendants' appear to concede that this delay is not fatal to Plaintiff's claim. See, *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155 (5th Cir 1982)(two years of negotiations not counted toward laches).

Defendants also contend that Plaintiffs failure to move for injunctive relief is "clear and convincing evidence that HDA did not consider itself damaged by the continued operation of the franchise," Defendants' Memorandum at p.7, thereby precluding a damage claim. Not surprisingly, Defendants cite no case law in support of the proposition that damages in a Lanham Act case are precluded unless a motion for injunctive relief is prosecuted.

**(3)   Plaintiffs Assert Lanham Act Damages**

Defendants contend that Plaintiffs "have admitted in identical litigation that their only damages for a franchisee continuing to operate the franchise after termination are the royalties and advertising fees due under the franchise agreement". Defendants Memorandum at p. 8. This is a misstatement. Defendants quote from Honey Dew Associates, Inc. v. M&K Food Corp. ("M&K"), 241 F.3d 23, 25, (1st Cir 2001), in which the Plaintiffs waived trademark infringement damages because it was not "cost effective to proceed on the Lanham Act" damage claim. This is not an "admission" that such damages did not exist.[5]

**(4) Defendants Claim that all Post-Termination Payments due were**

---

[5] Nor are the cases, as alleged by Defendants, "identical" to the case at bar. Defendants' Memorandum at p. 8. M&K Foods, Inc. had located the site, leased the site and invested a large sum of money in building a donut shop, perhaps significant facts in the court's decision to allow the franchisee to turn the location into a generic donut shop. In the case at bar, an already operating Honey Dew Donuts® Shop was purchased by Defendants from an existing franchisee.

**Paid is Disputed**

Defendants contend that Count II contractual damages cannot be awarded, as a matter of law, because all post-termination amounts due were paid. The asserted "payment" is disputed. <u>Defendants' Memorandum</u>, at p.4.

It is undisputed that Defendants continued to make royalty (7% of gross sales) and advertising fund payments (2% of gross sales) to BII, through the post-termination period during which Defendants continued to operate as a Honey Dew Shop. However, the Franchise Agreement provides as follows:

> It is further agreed, without limiting any of our rights and remedies hereunder, that if you continue to operate upon the subject premises, following termination or expiration . . . you shall continue to owe us such amounts as work have been due if this Agreement and the Sublease, if any, remained in full force and effect through the date your operation ceases and, as compensation for our additional losses, inconvenience and costs, you agree that the Royalties due for such period shall be 14% of gross sales.

<u>Franchise Agreement</u>, §XXI(B)(3), Exhibit B to Verified Complaint.

It is undisputed that Defendants paid a 7% royalty post-termination, not a 14% royalty. Additionally, per the Franchise Agreement, payments were not made on time and BII is entitled to interest and costs of collection.

Additionally, after Defendants closed their Honey Dew Donuts Shop following the June 29 State Conference, they immediately reopened as Vinny's Donuts, which they operated from July to early December, 2004. <u>Ciummo Transcript,</u> pps. 25 and 28-29, Exhibit A hereto. The Franchise Agreement specifically requires payments for the period upon which Defendants continue to operate on the premises. Defendants continued in business into December, 2004, but stopped making payments after June, 2004. Thus, BII is entitled to 19% of gross sales during this period.

### (5) BII is also entitled to Liquidated Damages

The Franchise Agreement provides BII (and HDA) with compensation for their post-termination lost royalty and advertising fund stream of payments through the intended expiration of the franchise.[6] Defendants contend that this liquidated damage clause is an unenforceable penalty. Such disputes are fact specific, inappropriate for determination by summary judgment. See *A-Z Servicenter, Inc. v. Segall*, 334 Mass. 672, 138 N.E.2d 266, 268 (Mass. 1956); *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 408 N.E.2d 1370, 1374-75 (Mass. 1980).

Defendants contend an exception to this general rule, claiming that Plaintiffs are judicially estopped from claiming the liquidated damage clause is reasonable because they have previously contended that a different liquidated damage provision is reasonable. Defendants' Memorandum at 15. The doctrine of judicial estoppel "prevents a party from asserting a position in one legal proceedings that is clearly contrary to the position asserted in another, earlier legal proceeding. *New Hampshire v. Maine*, 532 U.S. 742 (2001). However, application of this principal to this case would be proper if there is <u>one</u> and <u>only one</u> liquidated damage formulation which could be reasonable. Obviously, since liquidated damages represent the parties' efforts to come to a valuation which is not "unreasonably and grossly disproportionate to" or not "unconscionably excessive of" actual damages, in circumstances where actual damages are difficult to measure with certainty, *Kelly v. Marx*, 428 Mass. 877, 879 (1999), there are a variety of formulations which could be "reasonable."

---

[6] The Franchise Agreement requires current payment of post-termination Royalties and Advertising Fee payments through the intended expiration of the Franchise Agreement. Future gross sales are deemed to be the average of the 26 highest sales week in the year prior to termination. Franchise Agreement, §XXI(B)(2) and (4), Exhibit B to Verified Complaint.

Plaintiffs are not precluded from advancing different formulations.[7] It is the Defendants' burden to prove the formulation of the contract unreasonable. *M&K, supra.,* 241 F.3d at 27. Summary Judgment on this issue should be denied.

### (6) Defendants Claim that contractual claims must fail for lack of jurisdiction is without merit

Defendants also claim that this court does not have jurisdiction to determine the state law contractual claims asserted in Count II. Defendants' Memorandum, at p.4. No basis for this contention nor any supporting authority is cited. This contention may be based on obtaining summary judgment on the Lanham Act claims, divesting the court of federal question jurisdiction. However, since summary judgment is not appropriate for the Lanham Act claims, this argument fails.

Defendants also accuse the Plaintiffs of forum shopping ("BII tried the United States District Court in Rhode Island and did not like the result . . . Shopping for a friendlier forum, BII has attached itself to the coattails of HDA in this action . . .") Defendants' Memorandum at p. 11. This gratuitous remark, suggesting improper conduct, is not even factually correct.[8] The underlying contract states: "Any claim or controversy arising out of or relating in any way to the Franchise Agreement or any other contract between the parties, or the breach thereof, shall be submitted, at our option, to the jurisdiction of the courts of the Commonwealth of Massachusetts

---

[7] For judicial estoppel to be imposed, the party must take a position "clearly inconsistent" with an earlier position, *United States* v. *Hook*, 195 F.3d 299, 306 (CA7 1999), and must succeed in convincing the court to accept the position. E.g., *United States* v. *C. I. T. Constr. Inc.*, 944 F.2d 253, 259 (CA5 1991); See *Hook*, 195 F.3d at 306. Neither element of judicial estoppel is present. In *M&K*, the lower court's determination that the liquidated damage provision then in effect was invalid was overturned by the Court of Appeals because the issue *had not been litigated*.

[8] Defendants refer to the lower court decision in the M&K case. That decision was reversed on appeal. Defendants suggest that the Franchise Agreement for M&K "essentially" a "duplicate" of the Defendants' Franchise Agreement. Defendants' Memorandum at fn. 5. However, Defendants concede that the liquidated damage provision was different. Id. at 15.

including, if appropriate, the Federal District Court for the District of Massachusetts. . ."

**Conclusion**

      Material issues of fact exist as to damages.  Defendants' Motion for Summary Judgment should be denied.

Date: January 9, 2006

      The Plaintiffs,
      By their Attorneys,

      /s/ Michael A. Wirtz
      _____
      Jack J. Mikels, BBO# 345560
      Michael A. Wirtz, BBO# 636587
      JACK MIKELS & ASSOCIATES, LLP
      1 Batterymarch Park, Suite 309
      Quincy, MA  02169-7454
      Tel:  617.472.5600

Case 1:04-cv-10702-RWZ    Document 34    Filed 01/09/2006    Page 9 of 9