UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C. A. NO. 04-10702-RWZ

BOWEN INVESTMENT, INC. and
HONEY DEW ASSOCIATES, INC.
          Plaintiffs,

v.

C-NINE SEVEN, INC., VINCENZO CIUMMO
AND SHARON CIUMMO,
          Defendants.

## THIRD AFFIDAVIT OF ROBERT P. BOWEN

I, Robert P. Bowen, on oath, do hereby depose and state as follows:

1. I am the President of the Plaintiff, Bowen Investment, Inc. I make the following statements on my personal knowledge.

2. I authorized the termination of C97's franchise by a written Notice of Termination dated February 17, 2004 and served February 18, 2004. The Notice of Termination provided, in relevant part:

> . . .your Franchise Agreement is terminated immediately on written notice as a result of such default. Your attention is respectfully directed to Section XXI of your Franchise Agreements which requires that you "immediately discontinue the use of all Proprietary Marks, trade marks, sign, structures, and forms of advertising" indicative of Honey Dew Donuts. See your Franchise Agreement regarding additional responsibilities and liabilities resulting from this termination.

3. Section XXI(A)(1) of the Franchise Agreement between BII and C97 (the "Franchise Agreement") provides: "Your continued use of the Proprietary Marks licensed



hereunder including, without limitation, the name "Honey Dew Donuts"™ shall constitute willful trademark infringement."

4. Section XXI(A)(2) of the Franchise Agreement provides in relevant part: " . . . you must peaceably and forthwith give up the franchised premises . . ."

5. Following termination, Defendant continued to operate using the Proprietary Marks.

6. In February and March, 2004, I attempted unsuccessfully to set up a meeting with Mr. Ciummo to discuss a reinstatement of his franchise. During this period, I authorized this litigation to be filed. Thereafter, a meeting was arranged in April

7. In early April, 2004, I met with Mr. Ciummo and I offered him a Reinstatement Agreement. I called Mr. Ciummo approximately one week later. He said he was concerned about future inspections and paying BII's legal fees. He indicated he would follow-up to negotiate changes. I never heard back from him and, after waiting several weeks for a response, I authorized service of process to be made to continue the litigation.

8. At no time did I ever waive the termination of C97's franchise nor consent to its continued operation or use of the Proprietary Marks. To the contrary,

> (a) The Notice of Termination expressly stated: "Any payments received from this date forward will be accepted under protest, for use and occupancy only, and without waiver of this termination, any rights pursuant to the Franchise Agreement and Sublease, or any prior Notice of Default and/or Notice of Termination."
>
> (b) Section XXII of the Franchise Agreement provides in relevant part: "Any payment tendered by you after termination will be accepted as a payment or partial payment of sums due, as the case may be, but without waiver of termination. If you remain upon the franchised



premises after termination, any payments for the period after termination will be accepted as a payment or partial payment of sums due for continuing use of the franchise and without waiver of termination."

9. It is not correct that BII was paid all sums due through cessation of such operations for the following reasons:

(a) Post-termination payments made by C97 were in the sum of 9% of gross sales. Pursuant to Section XXI(B)(3) of the Franchise Agreement, post-termination payments accrued at a rate of 16% of gross sales;

(b) Following cessation of operations as a Honey Dew Donuts® Shop, in violation of the Franchise Agreement, defendants continued to operate upon the site as "Vinny's Donuts." Pursuant to Section XXI(B)(3) of the Franchise Agreement, continuing payments would be due for this operation at a rate of 16% of gross sales. No payments have been made for such operations;

(c) The 16% payments were due each Friday, for the week ending the preceding Sunday. To the extent payments were made, they were not made on time and, pursuant to the Franchise Agreement, accrued interest from the date due to the date paid at an annual rate of 18%.

Signed under the penalties of perjury this ___7th___ day of January, 2006.

_____
Robert P. Bowen