UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HONEY DEW ASSOCIATES, INC. and BOWEN INVESTMENT, INC., Plaintiffs, v. C-NINE SEVEN, INC., VINCENZO CIUMMO and SHARON CIUMMO, Defendants | ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION No. 04-10702-RWZ |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**RESPONSE TO STATEMENT OF MATERIAL FACTS IN DISPUTE**

The separate pleading entitled "Plaintiffs' Opposition to Defendants' Motion for Summary Judgment as to the Verified Complaint and Statement of Material Facts in Dispute" denies two *conclusions* which the defendants argue are supported by the facts: First, that Honey Dew Associates, Inc. ("HDA"), the Honey Dew Donuts® ("HDD®") trademark owner, impliedly licensed C-Nine Seven ("C-97"), by allowing it to continue operating after the termination of its franchise; *a fortiori*, after HDA filed a Lanham Act suit for an injunction to stop them and allowed the store to remain open. Second, that HDA suffered no Lanham Act damages, because C-97 made all of the franchise payments due to Bowen Investment, Inc. ("BII") prior to closing the store. The plaintiffs support their denials by reference to the conclusory, self-serving Affidavit of Robert P. Bowen, the President of BII. The facts speak for themselves and, succinctly put, just because Mr. Bowen says it isn't so doesn't mean it isn't so.

## ARGUMENT

Although the ultimate conclusions that this Honorable Court may draw from the facts with regard to HDA's and BII's claims are in dispute, the facts themselves are not:

1. HDA owns the HDD® trademark.

2. HDA allowed BII to franchise HDD® stores in Rhode Island.

4. BII granted C-97 a franchise to operate an HDD® store in Rhode Island.

5. BII terminated C-97's franchise by a notice dated February 17, 2004.

6. HDA and BII filed the present action, including a prayer for a TRO, on April 6, 2004.

7. HDA and BII served the Complaint in the present action on May 12, 2004.

8. C-97 closed its HDD® store on about June 27, 2004.

9. Up to the time C-97 closed its HDD® store, it continued to pay the royalties and advertising fees due to BII.[1]

10. Up to the time C-97 closed its HDD® store, the plaintiffs knew it was continuing to operate and did nothing to stop it.

The defendants respectfully submit that on those undisputed facts, this Honorable Court can find that there was an implied license by HDA and that HDA[2] sustained no Lamham Act damages.[3]

---

[1] As discussed *infra*, BII claims that its Franchise Agreement specifies that the royalty goes from 7% to 14% post-termination, the 100% increase being for BII's unspecified additional costs.

[2] As discussed *infra*, the provision for doubling the royalty is part of the post-termination provisions in the contract between *BII* and C-97. The Lanham Act provides its own non-contractual determination of damages for trademark infringement. *HDA* has no right to enforce BII's state law contract claim under the Lanham Act.

[3] The defendants contend that, if HDA's Lanham Act claim fails, which is the only basis for federal jurisdiction alleged in the Complaint, then BII's "pendant" state law contract claim should be dismissed.

The plaintiffs cannot have it both ways. The Franchise Agreement is the only contract between BII and C-97. If it was still in effect, then C-97 had a right to continue to operate its HDD® store. If it was terminated, as the plaintiffs repeatedly argue that it was, then the cases in which an implied license was found to have existed are applicable. Nor does the recitation in the Franchise agreement, that operation of the franchise after termination is willful trademark infringement, preclude the subsequent creation of a franchise-at-will.

The purpose of negotiations is to *prevent* litigation. What the plaintiffs conveniently ignore is that they obviated this salutary purpose by bringing this action *before* they offered to reinstate C-97's franchise. If the plaintiffs want credit for being good sports, then they should not have filed a lawsuit in which, under oath, they claimed that they were being irreparably harmed by C-97's continued use of HDA's trademark, while allowing the store to continue to operate. The plaintiffs' forbearance, obviously for their own benefit,[4] is eloquent testimony to their implied consent. See Villanova University v. Villanova Alumni Educational Foundation, Inc., 123 F.Supp.2d 293, 308 (USDC EDPA, 2000) (The test for whether or not an implied license existed is based solely on the objective conduct of the parties).

The plaintiffs further argue that after the termination they lost the ability to control the use of the trademark. As a matter of law, HDA exercised control over the use of its trademark by filing its Lanham Act complaint and seeking to enjoin the alleged infringement by C-97. As a matter of fact, HDA continued to exercise its right of control, as evidenced by the inspection by

---

[4] The plaintiffs admit they were paid all of the regular franchise fees during the post termination period. Defendants' Memorandum, p. 6. There is no evidence that they accepted these payments under protest or with any reservation. See Staples v. Collins, 321 Mass. 449, 451, 73 N.E.2d 729 (1947) ( payment and acceptance of rent, standing alone, are prima facie proof of the creation of a tenancy at will).

3

Frank Wrightington on behalf of BII in March, after the franchise was terminated. Deposition of Frank Wrightington.

As to HDA's lack of damages, leaving aside the legal maxim of *volenti fit non injuria*, the common sense reading of plaintiff's concession in the Honey Dew Associates, Inc. v. M&K Food Corp., 241 F.3d 23, 25 (1st Cir 2001), that it was not "cost effective to proceed on the Lanham Act" damage claim, is that there was no profit in it, meaning that the plaintiffs would not recover any more in statutory damages then they would in contract damages. Nor have plaintiffs demonstrated to this Honorable Court any trademark infringement damages beyond the penalty of double royalties purportedly imposed by the Franchise Agreement. As to that provision, the plaintiffs have not provided this Honorable Court with any explanation as to why they are entitled to the additional royalties. Moreover, whatever the percentage, it is still *contract damages*,[5] and HDA is not a party to that contract.

Finally, the plaintiffs contend that whether a liquidated damage provision is an unenforceable penalty is invariably a question of fact and, therefore, not appropriate for summary judgment. In support of their position, they argue that "there are a variety of formulations which could be "reasonable." While the defendants agree that there can be more than one way to do the

---

[5] According to the Franchise Agreement, it is because of unspecified "additional losses, inconvenience and costs," Plaintiff's Memorandum, p. 6. Legal fees for post-termination enforcement are provided for separately and in M&K, *supra*, p. 358, Judge Lagueux found that BII *saved* money by termination of the franchise:

> Common sense dictates that Bowen will save an unstated amount because it does not have to supervise the operation of the shop and regularly send personnel to Rhode Island to ensure that M&K complies with the Franchise Agreement [and] will no longer be bound to provide services and support for M&K as required by the Franchise Agreement. Id.

4

math, there can only be *one answer*. If HDA is on record as claiming that $X is reasonable, then it is estopped from arguing subsequently that under the same franchise agreement $X+ is reasonable. In M&K, *supra*, HDA represented in open court that using the average of *the last 12 months* gross revenues was a reasonable estimate of its post-termination damages. Leaving aside the Court's finding that it was not,[6] the formula in this case, which uses the average of *the six highest months* of the last year, inevitably will produce a substantially higher number. If the former is reasonable than the latter is not, as a matter of law.

WHEREFORE, for the forgoing reasons, the defendants respectfully move for summary judgment, pray that the plaintiffs' Verified Complaint be dismissed and that they be awarded their costs and attorneys' fees.

Respectfully submitted,

The plaintiff,
By her attorneys,

/s/ John N. Lewis
John N. Lewis
BBO# 298520
Lawrence Mehl, of Counsel
BBO# 566235
JOHN N. LEWIS & ASSOCIATES
21 Merchants Row, 5th Floor
Boston, MA 02109
(617) 523-0777

**CERTIFICATE OF SERVICE**
I hereby certify that on this date I served a copy of the foregoing by first class mail, postage prepaid, on all counsel of record and parties pro se.
Date: 1/23/06  /s/ John N. Lewis

---

[6] The First Circuit Court of Appeals returned the case to the District Court for further hearing, not because it erred in finding that the liquidated damages provision was a penalty, but because it erred as to who had the burden of proof on the issue.