UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 04-10702-RWZ


BOWEN INVESTMENT, INC. and
HONEY DEW ASSOCIATES, INC.

v.

C-NINE SEVEN, INC.,
VINCENZO CIUMMO and
SHARON CIUMMO


MEMORANDUM OF DECISION

June 28 , 2006

ZOBEL, D.J.

   Plaintiff Honey Dew Associates, Inc. ("HDA"), a Massachusetts corporation, franchises donut and coffee shops known as Honey Dew Donuts Shops. Plaintiff Bowen Investment, Inc. ("BII"), also incorporated in Massachusetts, is the subfranchisor of Honey Dew shops in the State of Rhode Island. Beginning in January 1999, defendant C-Nine Seven ("C97"), a Rhode Island corporation, and its owners, Vincenzo and Sharon Ciummo, ran a Honey Dew franchise in Central Falls, Rhode Island. Under the parties' Franchise Agreement, defendants were required to submit to periodic evaluations and to receive a passing score. On December 18, 2003, C97 failed an inspection, which resulted in a Notice of Default, dated January 5, 2004. Following the notice-and-cure period provided by the Franchise Agreement, C97 was once again inspected on February 3, 2004. Once again, it failed to receive a passing score. BII thus sent C97 a Notice of Termination on February 17, 2004. BII's subsequent efforts to negotiate a Reinstatement

Agreement failed. C97 continued to operate as a donut business for some period after termination, but eventually closed.

In April 2004, both parties became involved in two separate lawsuits. First, C97 became a co-plaintiff and BII became a co-defendant in a previously filed, pending class action by several Honey Dew franchisees against several defendants. See <u>B&M Donuts, Inc. v. Honey Dew Assocs.</u>, No. 03-10965-JLT (D. Mass.). Second, plaintiffs filed this suit against defendants in this case for trademark infringement and breach of contract. Defendants counterclaimed, alleging breach of contract, breach of the covenant of good faith and fair dealing, and violation of Mass. G. L. c. 93A. BII now moves for summary judgment on defendants' counterclaims, and defendants move for summary judgment on both counts of the complaint. Summary judgment under Fed. R. Civ. P. 56(c) on either motion is appropriate if—viewing the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in its favor—no genuine issue of material fact remains. See <u>Casas Office Machs., Inc. v. Mita Copystar Am., Inc.</u>, 42 F.3d 668, 684 (1st Cir. 1994).

I.  <u>BII's Motion for Summary Judgment</u>

Counts I and II of defendants' counterclaim allege breach of contract and breach of the covenant of good faith and fair dealing, respectively, based upon BII's termination of the Franchise Agreement "upon manufactured and fictitious grounds." (Counterclaim ¶¶ 9, 12). In a joint pretrial memorandum submitted by the parties, defendants clarified that BII had "breached the Franchise Agreement by deliberately terminating the franchise in bad faith in retaliation for the defendants' participation in a federal class action against HDA and BII for, among other things,

taking illegal kickbacks from suppliers." (Joint Pretrial Mem. 2).[1] BII points out, however, that it could not have terminated the Franchise Agreement in retaliation for defendants' participation in the class action suit because defendants joined that suit only after their franchise had been terminated. Defendants effectively concede this chronology. (See Defs.'Opp. ¶ 16), but raise two arguments in response.

First, defendants argue that BII was aware of the class action suit before April 2004 and may have known that C97 intended to join the suit before it officially did so. According to defendants, BII terminated C97's Franchise Agreement as "a preemptive effort to foreclose their joinder." (Id. at 8). This argument fails both for lack of evidence and lack of logic. Defendants have presented no facts from which a reasonable jury might conclude that BII knew or suspected before it terminated C97 that C97 was a potential party to the class action litigation. The only relevant record evidence is a letter from class action counsel on March 5, 2004—two weeks after C97 was terminated—indicating that C97 would be added as a plaintiff. "When a movant[] has suggested that competent evidence to prove the case is missing, the burden devolves upon the nonmovant[] to document some factual disagreement sufficient to withstand summary judgment." Pakizegi v. First Nat. Bank of Boston, 831 F. Supp. 901, 907 (D. Mass. 1993). "[S]pecific, competent evidence" is required, and not merely "allegations or conjecture." Id. Defendants here have fallen short. Moreover, they fail adequately to explain why BII—if it suspected that C97 might join the class action suit and wanted to "foreclose" that possibility—would have chosen to

---

[1] That case was recently remanded to state court by another judge in this district, following dismissal of certain counts. See B&M Donuts, Inc. v. Honey Dew Assocs., Inc., No. 03-10965-JLT, Docket No. 201 (D. Mass. June 14, 2006). Defendants in that case, who are plaintiffs in this case, are appealing that decision. Id., Docket No. 202.

terminate C97. Such a measure would more likely have angered than appeased a prospective litigant.

Defendants' other argument is that their claims are based not on a retaliation theory, but rather on the theory that in 2003, "HDA created and implemented a new set of primarily subjective standards which it self-servingly enforced selectively to put C-97 out of business." (Defs.' Opp. 7). Defendants have provided no evidentiary support for this assertion. While it is true that HDA implemented a new set of inspection standards in 2003, the deposition testimony of Frank Wrightington cited by defendants indicates that the standards were uniformly implemented across all Honey Dew stores, not selectively enforced. (Wrightington Dep. 21-25). Mr. Wrightington also testified that the questions posed by the inspection forms were primarily objective, not subjective. (Id. at 31 (noting that 70-80% of approximately 1,100 questions were objective)). Rather than supporting defendants' characterization of HDA's new inspection standards and their enforcement, this testimony directly contradicts it. Indeed, Mr. Wrightington's testimony reveals that while C97 had passed all of its inspections prior to 2003, it had never been among the highest-scoring franchisees, but instead had regularly achieved scores that hovered just above passing. (Id. at 26-29). C97's failing grade in 2003 was thus hardly the dramatic change portrayed by defendants. Defendants have simply offered no support for their claims of breach of contract or breach of the covenant of good faith and fair dealing. BII is therefore entitled to summary judgment on Counts I and II of plaintiffs' counterclaim.

As for Count III, which alleges a violation of M.G.L. c. 93A, it is barred by § 11, which requires that any alleged unfair conduct have "occurred primarily and substantially within the Commonwealth" to be actionable. It is undisputed that C97 is a Rhode Island corporation that

did business in Rhode Island, and that the individual defendants are Rhode Island residents. Plaintiff BII, though incorporated in Massachusetts, conducts business solely in Rhode Island. All inspections of C97 took place in Rhode Island. The termination letter sent to C97 may have been generated in Massachusetts, but all of the harm plaintiffs allegedly suffered as a result occurred in Rhode Island. See M&I Heat Transfer Prods., Ltd. v. Gorchev, 141 F.3d 21, 23-24 (1st Cir. 1998). Accordingly, BII's motion is allowed as to Count III as well.

II.     Defendants' Motion for Summary Judgment

Count I of plaintiffs' complaint seeks injunctive relief and damages for defendants' alleged trademark violations. Count II seeks post-termination damages under the parties' Franchise Agreement. Two preliminary matters require clarification. First, HDA is the sole trademark owner in this case. BII is not alleged to own any Honey Dew trademarks or service marks. Accordingly, the trademark claims in Count I are treated as claims by HDA alone. Second, HDA's request for injunctive relief under Count I is moot, since defendants ceased operations as a Honey Dew store in June 2004 and ceased operations on the premises altogether in December 2004. With respect to both counts, defendants seek summary judgment on numerous grounds.

A.     Count I

Defendants contend that HDA's trademark claim fails because HDA impliedly licensed trademark rights to defendants during the period when the parties were negotiating possible reinstatement. As HDA points out, however, even if an implied license existed during the period of negotiation (a fact HDA disputes), such an implied license had been terminated at least by the time defendant was served with the complaint in this case, in early May 2004. (See Defs.' Rule 56.1 Statement ¶ 8). Defendants continued to operate C97 as a Honey Dew store for

approximately six more weeks, during which no implied license could have existed. (See Ciummo Aff. ¶ 8). Thus, even if defendants prevailed on their implied license argument, they would still face allegations of trademark violations for that six-week period. Accordingly, summary judgment on grounds of an implied license is inappropriate.

Second, defendants claim that HDA delayed service of the complaint for one month after filing suit and delayed prosecution of its claim for injunctive relief until after defendants had ceased operations. These delays, defendants contend, are "clear and convincing evidence that HDA did not consider itself damaged by the continued operation of the franchise," thereby precluding any claim for damages. HDA notes in response, however, that it waited for one month to serve the complaint while it attempted to negotiate settlement with defendants. Courts do not penalize reasonable delay attributable to good-faith settlement negotiations. Cf. Armco, Inc. v. Armco Burglar Alarm Co., 693 F.2d 1155 (5th Cir. 1982) (stating this principle in equitable context with respect to two-year delay). Nor have defendants cited any support for the proposition that delay in prosecuting a claim for injunctive relief prevents a plaintiff from seeking damages.

Third, with respect to Lanham Act damages, defendants contend (1) that the only damages sought by HDA are royalty and other fees under the parties' Franchise Agreement, and (2) that where a trademark owner seeks only royalty payments, no federal trademark infringement claim lies. The only evidence cited by defendants in support of the first proposition, however, is another case in which HDA decided to pursue only contract damages under their franchise agreement, but not Lanham Act statutory damages. But as HDA notes, its decision not to pursue statutory damages in that case was strategic, as plainly stated in the decision cited by defendants.

See Honey Dew Assocs., Inc. v. M&K Food Corp., 241 F.3d 23, 25 (1st Cir. 2001) (plaintiffs decided not to seek Lanham Act damages because it was not "cost effective"). HDA's decision not to pursue statutory damages in a separate case does not constitute an admission that it cannot seek Lanham Act damages in addition to royalties in this case. Indeed, at the January 26, 2006 hearing, HDA's counsel expressly stated that it seeks both Lanham Act damages and contract damages.

As defendants have offered no other objections to HDA's claim for damages under the Lanham Act, summary judgment on Count I is denied.

    B.    Count II

Defendants attack plaintiffs' contract claim for post-termination damages by arguing that all post-termination damages due have been paid. Factual disputes on this point clearly remain, however, since plaintiffs argue that defendants (1) paid only a 7% royalty, rather than the 14% post-termination royalty due under the liquidated damages provisions of the Franchise Agreement, and (2) paid no royalties from July to December 2004, during which period they continued operating on the premises as Vinny's Donuts and thus owed payments of 19% of gross sales under the liquidated damages provisions of the Franchise Agreement. If these provisions are enforceable, defendants have not fulfilled their contractual obligations under the Franchise Agreement.

Defendants argue that the liquidated damages provisions of the Franchise Agreement are unenforceable as a matter of law. Courts routinely grapple with "[w]hether a provision of a contract for the payment of a sum upon a breach is rendered unenforceable by reason of its being a penalty." A-Z Servicenter, Inc. v. Segall, 334 Mass. 672, 675 (1956). Where the contract

7

provides only for "actual damages [that] are difficult to ascertain and . . . the sum agreed upon by the parties at the time of the execution of the contract represents a reasonable estimate of the actual damages," the sum is deemed liquidated damages and the provision is enforced. Id. "But where the actual damages are easily ascertainable and the stipulated sum is unreasonably and grossly disproportionate to the real damages . . ., or is unconscionably excessive, the court will award the aggrieved party no more than his actual damages." Id. In this case, defendants argue that plaintiffs are judicially estopped from defending the liquidated damages provision because it is different from, and higher than, a liquidated damages provision that plaintiffs previously advocated in a separate case. The doctrine of judicial estoppel, however, "prevents a party from asserting a position in one legal proceeding that is clearly contrary to the position asserted in another, earlier legal proceeding." New Hampshire v. Maine, 532 U.S. 742 (2001) (emphasis added). Just because plaintiffs argued the reasonableness of a different liquidated damages provision in another case does not mean they are estopped from arguing reasonableness in this case; as plaintiffs point out, "there are a variety of formulations which could be 'reasonable.'" (Pls.' Opp. 7).

     Defendants also contest the court's supplemental jurisdiction over plaintiffs' contract claim. They argue first that supplemental jurisdiction is inappropriate once summary judgment is granted on the Lanham Act claim; as explained above, however, summary judgment on Count I is denied. Second, defendants contend that plaintiffs' contract claims are not sufficiently related to its federal Lanham Act claim to meet the requirements of 28 U.S.C. § 1367(a). This argument is entirely without merit; both plaintiffs' Lanham Act claim and their contract claim are based on defendants' conduct following the termination of the C97 franchise.

III.     Damages and Attorneys' Fees

Finally, defendants request summary judgment on the issue of punitive damages and on plaintiffs' request for attorneys' fees. The request is premature. Whether or not HDA is entitled to double or treble damages under 15 U.S.C. § 1114 depends upon whether any infringement by defendants was willful or egregious. Infringement has not yet been established, nor has the factual record been sufficiently developed for the court to determine that any such infringement was not, as a matter of law, willful. As for attorneys' fees, defendants object to the award of attorneys' fees under the Lanham Act, since only prevailing parties may in some cases recover fees. Again, it is impossible to decide the issue at this stage in the litigation where there is no prevailing party and no record that would allow satisfactory assessment of entitlement to fees. With respect to plaintiffs' request for attorneys' fees under Count II, defendants concede that fees are provided under the Franchise Agreement.

IV.     Conclusion

Accordingly, BII's motion for summary judgment on defendants' counterclaims (#24 on the docket) is allowed on all counts. Defendants' motion for summary judgment on the complaint (#29) is denied.

|  |  |
|---|---|
| 06/28/06 | /s/ Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |